Borough of Big Run, Appellant, *v.* Katherine P. Shaw, Appellee.

Borough of Big Run, Appellant, *v.* Carl S. Keller and Barbara Keller, Appellees.

Argued November 7, 1974, before President Judge
BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS
and BLATT. Judges KRAMER and WILKINSON, JR., did not
participate.

*Marc Katzen,* with him *A. Ted Hudock,* for appellant.

*Robert T. Barletta,* with him *Robert V. Maine,* and
*Maine and Fennell,* for appellees, *Keller and Keller.*

*Robert V. Maine,* with him *Maine and Fennell,* for
appellee, *Shaw.*

OPINION BY JUDGE MENCER, January 7, 1975

This is another appeal where the litigants do not differ
on the applicable law but only on its application to the
factual situation which produced the dispute.

The Borough of Big Run decided to open a new street
and filed declarations of taking pursuant to the provisions

of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, *as amended*, 26 P.S. §1—101 et seq. The land condemned was to be transformed into a one-way street with a width varying between 10 feet and 12 feet and a length of approximately 451.5 feet, running parallel with Main Street and connecting Water Street and Mitchell Street in the Borough of Big Run.

Two owners of the 10 properties affected by the condemnation filed preliminary objections asserting that the taking was for a private and not a public purpose and that the condemnation was arbitrary and capricious. In addition to the constitutional question, condemnees Keller raised procedural questions which the court below did not discuss or decide because it sustained the condemnees' preliminary objections as they related to the constitutional challenge.

On the south side of the proposed roadway there are four properties. One of these properties encompasses 0.85 acres of land and is presently landlocked. This property is owned by Mr. and Mrs. Floyd A. States and, not surprisingly, the record indicates that Floyd A. States appeared before the Council of the Borough of Big Run in an attempt to have a roadway established between Water Street and Mitchell Street.[1] The property owners on the north side of the proposed roadway made no objections to the condemnation.

The law of this Commonwealth is settled that when a borough wishes to open a street or public roadway it has the right to acquire the land necessary to do so by eminent domain. *Milford Borough v. Burnett*, 288 Pa. 434, 136 A. 669 (1927). However, property cannot be taken by government without the owner's consent for the mere

---

1. The President of the Council testified that "the primary thing that triggered the action for condemnation" was the "incident" when Mrs. States had a heart attack at her home and had to be "carried across lots because it was impossible to get an ambulance back to her."

purpose of devoting it to the private use of another. *Redevelopment Authority of the City of Erie v. Owners or Parties in Interest,* 1 Pa. Commonwealth Ct. 378, 274 A. 2d 244 (1971).

In *Philadelphia Clay Co. v. York Clay Co.,* 241 Pa. 305, 309-310, 88 A. 487, 488 (1913), the Court stated the following:

> "While the power of the legislature to invest individuals or corporations with the right to take private property for a public use is clearly recognized by the Constitution, there is not a suggestion anywhere that private property may be taken for a private use. It has been uniformly held by the courts in our own state as well as in other jurisdictions that under the right of eminent domain private property can only be taken for a public use, and that it is not within the power of the legislature to invest either an individual or a corporation with the right to take the property of a private owner for the private use of some other individual or corporation even if a method is provided for ascertaining the damages and paying what shall be deemed just compensation. The underlying principle is that the owner of property has the right to the uninterrupted use and enjoyment of it against all the world, subject, however, to the sovereign right of the state to take so much of it as may be necessary to serve the various public uses to which it may be properly subjected."

Therefore, our attention must be focused upon what is a public use. Public use is a use that benefits the public. The establishment and operation of highways and roadways to be used by the public constitute public uses for which private property may be appropriated under the power of eminent domain.

The court below reached the conclusion that the condemnation here was for a private purpose and not a public use. It reasoned that the roadway was being put

in to serve private interest because Council acted after receiving requests from interested individuals, and one member of the Council stated that the street was being put in "for a right-of-way for Floyd States." We must disagree because the taking by eminent domain does not lose its public character merely because there may exist therein some feature of private gain, for, if the public good is enhanced, it is immaterial that a private interest also may be benefited. *Belovsky v. Redevelopment Authority,* 357 Pa. 329, 54 A. 2d 277 (1947). "Highways almost always benefit the owners of land through which they are laid out, and are often constructed at the request of individuals . . . but it has never been held that the laying out of a highway . . . is invalid on that account." 2A J. Sackman, Nichols Eminent Domain §7.222(2) (3d rev. ed. 1965). We cannot agree with the court below that a one-way street of 10 feet to 12 feet in width should be "scrutinized" differently from the usual public highway upon which traffic flows in both directions. Nor is the length of the street the determining factor relative to the question of public use.

The court below also reasoned that "the sole purpose to be served by the proposed alley is to grant access to a grantee of Wise (States) and a tenant of Wise (Barber) when Wise's land itself fronts on Main Street and when a private driveway over Wise's land would suffice." However, it is not for the court to exercise discretion as to what will "suffice," but rather it is a councilmanic decision directed to the public use. In addition, this record does not support the conclusion that the sole purpose for this condemnation was to gain access for States and Barber.

The President of the Council testified that the Borough explored routes to obtain access to this area and chose the straight path from Water Street to Mitchell Street to facilitate the use of snow clearance equipment, facilitate a single street grade, and provide

for emergency purposes. In addition, he stated this roadway would provide access to the rear of those properties fronting on Main Street between Water Street and Mitchell Street; also, that it would connect three existing dead-end streets and could be utilized for detour purposes. He also testified that by opening this roadway it would provide access in the event of further building on lots south of the proposed roadway.[2] Prior to reaching its decision, Council discussed the matter with police and fire personnel, consulted their solicitor, engineer, and garbage collectors. The representative of the professional engineering firm retained by the Borough was requested to give a recommendation and he recommended that the roadway be located where the condemnation was made by the Borough. The roadway would be open to public use.

We cannot conclude, as did the court below, that the condemnation here was without public benefit. Our Supreme Court, in *Washington Park, Inc. Appeal*, 425 Pa. 349, 355, 229 A. 2d 1, 4 (1967), cited with approval the following:

" 'The public character of the road does not depend upon the degree of public necessity or convenience that require it or the extent to which the public uses it, or the number of persons that it accommodates, and it is no legal objection that a proposed highway will be a *cul de sac,* or that it will lead to the residence or place of business of but one individual, for the public may desire to visit or do business with him. If a road is to be open for public travel the purpose for which the public may wish to travel is not material, and land may be taken by eminent domain for a road which is intended solely for driving for pleasure and recreation or to furnish a view of beautiful natural scenery. Streets are frequently laid out for the purpose of opening up private land, but if a street is to be open to public travel it is well settled that it is for

---

2.   There presently exist parallel streets north of Main Street.

the public use, although it is of especial convenience or advantage to certain individuals . . . .' 2 Nichols, Eminent Domain §7.512[1] (3d ed. 1963) (footnotes omitted)."

The court below relied heavily on our holding in *Redevelopment Authority of the City of Erie v. Owners or Parties in Interest, supra*. We held in that case that a condemnation exercised under circumstances constituting palpable bad faith would be set aside. In *City of Erie*, unlike here, land of an individual property owner was to be acquired by condemnation and turned over to another individual property owner. This would have resulted in the land's continuing to be used as before the condemnation with the identity of the owners being the only thing changed. Here the land condemned will be transformed into a public roadway, a one-way street, usable by all motorists. Therefore, the instant case is readily distinguishable from the factual circumstances confronting us in *City of Erie v. Owners or Parties in Interest, supra*.

Nor does this case involve substantial public financing of a private endeavor with any benefit to the public being of no more than a limited and incidental nature. Therefore, contrary to the lower court's view, this case is not controlled by *Price v. Philadelphia Parking Authority*, 422 Pa. 317, 221 A. 2d 138 (1966).

Our examination of this record convinces us that the purpose of the challenged condemnation by the Borough of Big Run was to acquire land to establish a roadway which will be used by the public. We conclude that this condemnation was for a public use and did not constitute arbitrary or capricious conduct by the condemnor.

Accordingly, the orders of the Court of Common Pleas of Jefferson County are reversed and the case docketed at No. 261 C. D. 1974 is remanded to that court to enable it to rule upon the undisposed preliminary objections of condemnees Keller relative to procedural questions.