**ADELPHIA CABLEVISION ASSOCIATES OF RADNOR, L.P., Appellee,**

v.

**UNIVERSITY CITY HOUSING COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 9, 2000.

Filed June 29, 2000.

Lori Kliner-Krenzel, Philadelphia, for appellant.

Geoffrey L. Beauchamp, Blue Bell, for appellee.

Before MUSMANNO, ORIE MELVIN and BROSKY, JJ.

MUSMANNO, J.:

¶ 1 Appellant University City Housing Company ("UCHC") appeals from an Order granting summary judgment in favor of Appellee Adelphia Cablevision Associates of Radnor, L.P. ("Adelphia") in this action for declaratory and injunctive relief. We affirm.

¶ 2 Adelphia provides cable television ("CATV") services to subscribers in Delaware County, having been granted franchises to provide such services by Radnor Township and other municipalities in Delaware County. UCHC is a property management company that owns and operates the Rosemont Plaza apartment complex and the Radcliff House Apartments in Radnor Township.

¶ 3 In December, 1994, tenants at Rosemont Plaza and Radcliff House requested

that Adelphia provide them with CATV services. On December 2, 1994, Adelphia notified UCHC, pursuant to Article V–B of the Pennsylvania Landlord and Tenant Act, *see* 68 P.S. §§ 250.501–B to 250.510–B (the Tenants' Right to Cable Television Act) (hereinafter "Article V–B"), that it had received requests from UCHC's tenants for CATV services. Adelphia requested access to the apartment complexes for the purpose of installing CATV services and also requested a meeting with UCHC representatives to finalize Adelphia's proposal for CATV installation. Subsequently, Adelphia made repeated requests to UCHC for permission to inspect the premises of Rosemont Plaza and Radcliff House to obtain information for Adelphia's CATV installation proposal.

¶ 4 On December 27, 1994, UCHC replied to Adelphia's December 2, 1994 letter, indicating that it would not enter into a negotiation period with Adelphia, as required under Article V–B, section 250.504–B, until Adelphia submitted a detailed proposal concerning installation of CATV in Rosemont Plaza and Radcliff House. Adelphia replied to UCHC on January 19, 1995, stating Adelphia's desire to meet with UCHC to discuss an installation plan and an inspection of the apartment complexes.

¶ 5 Representatives of Adelphia and UCHC met on March 23, 1995, but the issues related to Adelphia's installation proposal were not resolved. Adelphia wrote to UCHC again on April 11, 1995 requesting permission to inspect the premises. UCHC replied on April 19, 1995 and asked Adelphia for a memorandum addressing certain issues relating to Adelphia's proposed inspection of the properties, including asbestos removal if necessary, OSHA regulations, compensation to UCHC for any physical damage caused by the installation, security to be provided by UCHC, and the proposed time period for installation.

¶ 6 On June 25, 1996, Adelphia filed a Complaint against UCHC requesting that the trial court declare as a matter of law that Article V–B allows a CATV operator such as Adelphia to inspect a "multiple dwelling premises" to obtain information needed to prepare a CATV installation proposal. Adelphia also requested a declaration that the compensation to which a landlord is entitled under Article V–B is limited to compensation for physical damage, loss of use and loss of value to the landlord's property by the actual installation, and does not include compensation for any other kind of consequential loss or damage. Adelphia further requested that the court direct UCHC to allow Adelphia to inspect the premises of Radcliff House and Rosemont Plaza, order the parties to conclude negotiations for the installation process within the forty-five day period established by Article V–B, and direct that the parties negotiate in good faith.

¶ 7 UCHC filed preliminary objections to Adelphia's Complaint, which the trial court overruled. Thereafter, UCHC filed an Answer to the Complaint, New Matter, and a Counterclaim. In its Counterclaim, UCHC requested declaratory relief on several issues related to the responsibilities of a CATV operator seeking to install CATV in a multiple dwelling premises. UCHC also requested an injunction preventing Adelphia from gaining access to UCHC's properties until Adelphia complied with UCHC's request for a specific plan for safe installation and the identification of inspectors that Adelphia will employ.

¶ 8 On April 17, 1998, Adelphia filed a Motion for Summary Judgment. UCHC, on May 18, 1998, filed a Response to Adelphia's Motion for Summary Judgment and a Cross–Motion for Summary Judgment. In its Cross–Motion, UCHC contended, *inter alia*, that Article V–B was unconstitutional. Adelphia, on June 1, 1998, filed a Response to UCHC's Cross–Motion for Summary Judgment. In this Response, Adelphia contended that UCHC had waived all constitutional challenges to Article V–B pursuant to Pennsylvania Rules of Civil Procedure 235 (requiring

notice to the Pennsylvania Attorney General when the constitutionality of a statute is raised) and 1032 (stating that a party waives defenses and objections not presented in preliminary objections, answer, or reply). UCHC, in a Supplemental Memorandum in support of its CrossMotion for Summary Judgment, filed June 17, 1998, indicated that it had sent notice to the Pennsylvania Attorney General of its constitutional challenge on June 3, 1998.

¶ 9 On March 30, 1999, the trial court granted Adelphia's Motion for Summary Judgment. The trial court ordered the following: (1) that UCHC allow Adelphia's employees access to Radcliff House and Rosemont Plaza within thirty days; (2) that Adelphia provide UCHC with its completed CATV installation proposal within thirty days of the date of inspection; and (3) that the parties negotiate the conditions for installation for forty-five days commencing on the date of delivery of the installation proposal to UCHC. From that Order, UCHC filed the present timely appeal, raising the following issues:

1. Whether the delegation of eminent domain power to private CATV operators under Article V–B violates the United States or Pennsylvania Constitutions by (a) failing to prescribe a standard under which CATV operators will provide CATV services and vesting the decision as to when the operator will provide services in the unfettered discretion of the operator, and (b) authorizing operators, private commercial entities, to condemn private property of landlords based on a profitability analysis?

2. Whether Article V–B violates the parties' substantive and procedural due process rights under both the United States and Pennsylvania Constitutions, and violates Article I, Section 10 of the Pennsylvania Constitution and the "taking" clause of the Fifth Amendment of the United States Constitution by (a) granting plenary power to an arbitrator to confer property rights on a CATV operator without conferring an automat-

ic right of appeal of the arbitrator's decision to a Court of Common Pleas, and (b) setting forth a standard of compensation that does not fully compensate the landlord for the taking of his property?

3. Whether Article V–B requires a CATV operator to set forth, in the notification process, how it intends to comply with the requirements of the landlord once those requirements are made known?

4. Whether a defendant can preserve a constitutional challenge to a state statute by raising that challenge for the first time in a Response to Plaintiff's Motion for Summary Judgment and Cross–Motion for Summary Judgment and by notifying the Pennsylvania Attorney General of the constitutional challenge at the trial court and appellate court levels?

*See* Brief for Appellant at 3.

¶ 10 We will not reverse a trial court's order granting summary judgment unless it is established that the trial court clearly abused its discretion or committed an error of law. *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245 (1995). "Summary judgment may be granted only when the facts, viewed in the light most favorable to the non-moving party, make it clear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *O'Donoghue v. Laurel Savings Ass'n*, 556 Pa. 349, 354, 728 A.2d 914, 916 (1999). Summary judgment will be granted only in cases that are clear and free from doubt. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991).

¶ 11 We first address UCHC's contention that the trial court erred in finding UCHC's challenges to the constitutionality of Article V–B to be waived. The trial court found, citing *Matter of Franklin Twp. Bd. of Supervisors*, 475 Pa. 65, 379 A.2d 874 (1977), that UCHC had waived its constitutional issues because UCHC did not raise those issues in preliminary objections. Further, the trial court determined that UCHC had waived those issues be-

cause it failed to notify the Pennsylvania Attorney General of its constitutional challenges as required by Pa.R.C.P. 235.

¶ 12 In general, matters not raised in the court below cannot be considered on appeal even if they involve constitutional questions. *Altman v. Ryan*, 435 Pa. 401, 257 A.2d 583 (1969). In the present case, UCHC raised various issues concerning the constitutionality of Article V–B in its CrossMotion for Summary Judgment, filed on May 18, 1998 in the trial court.

¶ 13 The trial court relied on *Franklin Twp.* in finding that UCHC had waived the issues of whether Article V–B violates the Pennsylvania or United States Constitutions. In *Franklin Twp.*, the Pennsylvania Supreme Court held that a constitutional issue raised on appeal by the defendants/appellants was waived because the defendants/appellants had not raised that issue in preliminary objections or in their answers. *Franklin Twp.*, 475 Pa. at 82, 379 A.2d at 883.

¶ 14 *Franklin Twp.* is distinguishable from the present case in that in *Franklin Twp.*, the defendants/appellants did not raise the constitutional issue at any time in the trial court proceedings. After the trial court in *Franklin Twp.* denied the defendants' preliminary objections, the trial court held a hearing and then ruled on the plaintiff's request for relief.[1] Thus, in *Franklin Twp.*, there was no other opportunity, as in the present case, after the filing of preliminary objections for the defendants to raise the constitutional issue.

¶ 15 In the present case, UCHC raised the issues that it asserts on appeal in a Cross–Motion for Summary Judgment filed in the trial court. This court has held that a constitutional issue may be raised at a later point in the trial court proceedings than the preliminary objections stage. *See Lynn v. Prudential Property and Cas. Co.*,

422 Pa.Super. 479, 619 A.2d 779 (1993) (holding that constitutional claim raised in cross-motion for summary judgment was not waived on appeal); *Norris v. Wood*, 336 Pa.Super. 305, 485 A.2d 817 (1984) (holding that constitutional issue first raised in motion for partial summary judgment was preserved for appeal). Thus, the trial court erred in finding that UCHC waived its constitutional issues on appeal on the basis of *Franklin Twp.*

¶ 16 UCHC also contends that the trial court erred in finding that UCHC did not properly notify the Pennsylvania Attorney General of its constitutional claims as required by Rule 235. Rule 235 provides as follows:

> In any proceeding in a court ... in which an Act of Assembly is alleged to be unconstitutional ..., the party raising the question of constitutionality ... shall promptly give notice thereof by registered mail to the Attorney General of Pennsylvania together with a copy of the pleading or other portion of the record raising the issue and shall file proof of the giving of the notice. The Attorney General may intervene as a party or may be heard without the necessity of intervention....

Pa.R.C.P. 235. In an action that involves a constitutional challenge to a statute, in which the Commonwealth is not a party, failure to provide Rule 235 notice results in waiver of the constitutional issue. *Spidle v. Livingston Constr. Co., Inc.*, 311 Pa.Super. 201, 205–07, 457 A.2d 565, 567 (1983). The promptness provision of Rule 235 does not require notification of the constitutional issue the first time that issue is raised at trial. *Dranzo v. Winterhalter*, 395 Pa.Super. 578, 587–89, 577 A.2d 1349, 1354 (1990). The argument will not be found waived if the relevant party substantially complied with Rule 235. *Id.*

---

1. In the complaint, the plaintiff, one of three supervisors of the township, requested the removal from office of the other two supervisors. In its final ruling on the complaint, the trial court ordered the removal of all three of the township supervisors. *Franklin Twp.*, 475 Pa. at 73, 379 A.2d at 878.

¶ 17 In the present case, UCHC notified Pennsylvania Attorney General Michael Fisher, on June 8, 1998, that it was raising the constitutionality of Article V–B. *See* Defendant's Supplemental Memorandum in Support of Defendant's Cross–Motion for Summary Judgment, Exhibit A. The trial court was apprised of that fact when UCHC filed its Supplemental Memorandum in Support of Defendant's Cross–Motion for Summary Judgment on June 16, 1998. Thus, the trial court erred in holding that UCHC did not comply with the notice requirements of Rule 235.[2]

¶ 18 We will now address UCHC's remaining issues on appeal.

¶ 19 UCHC first contends that Article V–B delegates eminent domain power to private CATV operators such as Adelphia, and that such delegation violates the Pennsylvania and United States Constitutions by failing to prescribe a standard under which CATV operators must provide services when requested. UCHC further argues that Article V–B is unconstitutional because it vests the decision as to when to provide CATV services in the unfettered discretion of an operator, and authorizes private entities to condemn private property based on profitability rather than on the basis of a public purpose or use.

¶ 20 UCHC contends that the alleged delegation of eminent domain power violates the due process clause and the taking clauses of the United States Constitution, and Article I, Section 10 and Article II, Section 1 of the Pennsylvania Constitution. Under the Fifth Amendment to the United States Constitution, no person shall "be deprived of ... property, without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const., Amend. 5. Similarly, under the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of ... property, without due process of law...." U.S. Const., Amend 14. Article 1, Section 10 of the Pennsylvania Constitution provides that private property shall not be taken or applied to public use "without authority of law and without just compensation being first made or secured." Pa. Const., Article I, Section 10. Under Article II, Section 1 of the Pennsylvania Constitution, "[t]he legislative power of this Commonwealth shall be vested" in the Pennsylvania General Assembly. Pa. Const., Article II, Section 1.

¶ 21 Our review of a claim that a statute is unconstitutional is limited to a consideration of whether the legislation at issue is clearly, palpably, and plainly in violation of the constitution. *Commonwealth v. Miller*, 455 Pa.Super. 534, 689 A.2d 238 (1997). Properly enacted statutes enjoy a strong presumption of constitutionality. *Id.* at 241.

¶ 22 The power of eminent domain over property arises only when legislative action sets forth the occasions, modes, and agencies for its exercise. *In re Legislative Route 1018*, 422 Pa. 594, 222 A.2d 906 (1966). The legislature may delegate the right to exercise eminent domain power, but the body to which the power is entrusted has no authority beyond that which is legislatively granted. *Id.* at 598, 222 A.2d at 908. Under the right of eminent domain, "private property can only be taken for a public use," and the legislature has no power "to invest either an individual or a corporation with the right to take the property of a private owner for the private use of some other individual or corporation, even if a method is provided for ascertaining the damages and paying what shall be deemed just compensation." *Borough of Big Run v. Shaw*, 16 Pa. Cmwlth. 623, 626–28, 330 A.2d 315, 317 (1975) (quoting *Philadelphia Clay Co. v.*

---

2. UCHC also notified the Attorney General of the raising of its constitutional claim on April 16, 1999, when UCHC filed its Notice of Appeal. *See* Pa.R.A.P. 521 (requiring that a party who questions the constitutionality of any statute in an appeal in which the Commonwealth is not a party give immediate notice to the Attorney General of Pennsylvania).

*York Clay Co.*, 241 Pa. 305, 309–10, 88 A. 487, 488 (1913)). A taking by eminent domain does not lose its public character merely because there may exist therein some feature of private gain. *Borough of Big Run*, 330 A.2d at 317. If the public good is enhanced, it is immaterial that a private interest also may be benefited. *Id.*

¶ 23 In enacting Article V–B, the General Assembly made the following findings:

(1) Cable television has become an important medium of public communication, education and entertainment.

(2) It is in the public interest to assure apartment residents and other tenants of leased residential dwellings access to cable television service of a quality and cost comparable to service available to residents living in personally owned dwellings.

(3) It is in the public interest to afford apartment residents and other tenants of leased residential dwellings the opportunity to obtain cable television service of their choice and to prevent landlords from treating such residents and tenants as a captive market for the sale of television reception services selected or provided by the landlord.

68 P.S. § 250.502–B, Historical and Statutory Note. Pursuant to these legislative purposes, the General Assembly enacted Article V–B, which grants eminent domain power to CATV operators upon a request by a tenant of a leased residential dwelling. *See* 68 P.S. §§ 250.503–B[3] and 250.504–B[4]; *see also Loretto v. Teleprompter Manhattan CATV Corp. et al.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (holding that a permanent physical occupation of an owner's property for purposes of the installation of CATV equipment constitutes a taking of the owner's property under the Fifth and Fourteenth Amendments to the United States Constitution).

¶ 24 Under Article V–B, if the operator decides that it will provide CATV services to a multiple dwelling premises, the operator must notify the landlord within ten days. *See* 68 P.S. § 250.504–B. That notice must be accompanied by a proposal "outlining the nature of the work to be performed and including an offer of compensation for loss in value of property given in exchange for the permanent installation of CATV...." *Id.* In addition, the proposal "shall include a statement that the operator is liable to the landlord for any physical damage, shall set forth the means by which the operator will comply with the installation requirements of the landlord ... and shall state the time period for installation and security to be provided." *Id.*

¶ 25 Article V–B then provides for a forty-five day period of negotiation during which the landlord and the operator "will attempt to reach an agreement concerning the terms upon which CATV services shall be provided." *Id.* If the landlord and the operator are unable to reach an agreement after the forty-five day period, then the operator may request arbitration. 68 P.S. § 250.506–B(a)(2). The statute also makes provisions for the payment of just compensation by the operator to the landlord. 68 P.S. §§ 250.505–B, 250.506–B(c).

---

**3.** Under section 250.503–B, a tenant "has a right to request and receive CATV services from an operator or a landlord provided that there has been an agreement between a landlord and an operator through the negotiation process outlined in section 504–B or through a ruling of an arbitrator as provided for in this article ... A landlord may not prohibit or otherwise prevent a tenant from requesting or acquiring CATV services from an operator of the tenant's choice provided that there has been an agreement between a landlord and an operator through the negotiation process outlined in section 504–B or through a ruling of an arbitrator as provided for in this article." 68 P.S. § 250.503–B (footnote omitted).

**4.** Under section 250.504–B, "[i]f a tenant of a multiple dwelling premises requests an operator to provide CATV services and if the operator decides that it will provide such services, the operator shall so notify the landlord in writing within ten days after the operator decides to provide such service." 68 P.S. § 250.504–B.

¶ 26 The legislative findings relative to the enactment of Article V–B make clear that the legislature has determined that the public interest is served by giving tenants of leased residential dwellings access to CATV services. Thus, when an operator decides to provide CATV services to such a dwelling, the public interest is served along with the private commercial interest of the operator. As we have stated, it is immaterial that a private interest is served by the exercise of eminent domain power as long as the public good is enhanced by that exercise. *Borough of Big Run*, 330 A.2d at 317. Further, Article V–B clearly provides methods for the exercise of eminent domain power delegated to the operator. *See Legislative Route 1018*, 422 Pa. at 596, 222 A.2d at 908. Accordingly, Article V–B is a constitutional delegation of eminent domain power.

¶ 27 UCHC objects to the fact that Article V–B permits an operator to decline to provide CATV services upon a tenant's request. In the present case, Adelphia did not decline to provide CATV services to UCHC's tenants. Therefore, UCHC's argument concerning the constitutionality of an operator's declining to provide such services is not properly before us. *See Sedat, Inc. v. Fisher*, 420 Pa.Super. 469, 617 A.2d 1 (1992) (holding that courts of this Commonwealth are precluded from issuing advisory opinions).

¶ 28 UCHC next contends that section 250.506–B(b)(4) is unconstitutional because it confers on an arbitrator a plenary right to grant property rights to a CATV operator, while failing to confer an automatic right to *de novo* review of all issues decided by the arbitrator. UCHC contends that section 250.506–B(b)(4) violates Article I, Section 10 of the Pennsylvania Constitution and the takings clauses of the Fifth and Fourteenth Amendments to the United States Constitution because it only allows the aggrieved party to appeal the sole issue of the amount awarded as just compensation, rather than all issues decided by the arbitrator. UCHC also con-

tends that section 250.506–B(b)(4) is unconstitutionally vague because it fails to state (1) whether the parties are entitled to an automatic right of appeal or whether they must file a petition to vacate or modify the arbitrator's award, and (2) whether the parties are entitled to a *de novo* review and a jury trial in a court of common pleas.

¶ 29 Section 250.506–B(b)(4) provides in pertinent part as follows:

> (4) Within thirty days of the date of the notice of the decision of the arbitrators, either party may appeal the decision of the arbitrators in a court of common pleas, regarding the amount awarded as compensation for loss of value or for physical damages to the property....

68 P.S. § 250.506–B(b)(4).

¶ 30 Due process is a flexible concept that calls for such procedural protections as the situation demands. *In re Adoption of Dale A.*, 453 Pa.Super. 106, 683 A.2d 297 (1996) (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The essential elements of due process are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. *Allstate Ins. Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973).

¶ 31 Section 250.506–B(b)(4) provides a landlord with the requirements of due process, *i.e.*, notice and an opportunity to be heard. Although section 250.506–B(b)(4) limits the issues that may be raised on appeal from an arbitrator's decision to those related to just compensation, the arbitrator's decision itself is limited to the issue of just compensation. *See* 250.506–B (setting forth procedures for determination of "[c]ompensation for loss of value"). Further, Article V–B does not limit a landlord's other rights to seek redress in the courts. For example, a landlord could file an action for an injunction or for a declaratory judgment if a landlord believed that a CATV operator's assertion of eminent domain rights was improper. *See Redevelop-*

*ment Auth., City of Erie v. Owners or Parties in Interest*, 1 Pa.Cmwlth. 378, 274 A.2d 244 (1971) (stating that courts will review exercise of eminent domain power if there is evidence of fraud or palpable bad faith in the exercise of such power). Thus, although section 250.506–B limits an appeal to the issue of loss of value or physical damages, Article V–B does not violate the Pennsylvania or United States Constitutions on that basis.

¶ 32 A statute will withstand a "vagueness" challenge and will satisfy the requirements of due process if it contains reasonable standards to guide the prospective conduct. *U.S. v. Powell*, 423 U.S. 87, 91–94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976). Section 250.506–B(b)(4) provides such a standard. The statute provides clearly that either party may appeal the arbitrator's decision to a court of common pleas within thirty days of that decision. 68 P.S. § 250.506–B(b)(4). The provision contains a reasonably ascertainable standard that is sufficient to guide the prospective conduct of landlords or operators. *See Powell*, 423 U.S. at 92, 96 S.Ct. 316. Accordingly, the statute does not violate due process. Further, under Article 5, Section 10 of the Pennsylvania Constitution, it is the function of the Pennsylvania Supreme Court, and not the Pennsylvania General Assembly, to prescribe rules of procedure for hearing and disposition of cases in court. *In re Appeal of Churchill*, 525 Pa. 80, 575 A.2d 550 (1990). As stated by the Pennsylvania Supreme Court in *Churchill* :

> [W]e know of no authority by which the Legislature can prescribe procedure in our courts under our Constitution. Article V, Section 10(c) of our Constitution specifically vests such authority in this Court. It is true that the Legislature can, and often does, enact statutes which give litigants a right of appeal; it can designate what court can hear a case, the scope of review on appeal, the time periods for taking an appeal, and in

many cases whether the right to jury trial shall be extended. But we know of no authority which would vest power in the Legislature to tell the Judiciary how to hear and dispose of a case. . . .

*Churchill*, 525 Pa. at 88, 575 A.2d at 554. Thus, the fact that section 250.506–B(b)(4) does not set forth specific procedures for an appeal in a court of common pleas does not violate due process.

¶ 33 UCHC next contends that Article V–B's standard of just compensation is unconstitutional because it only requires a CATV operator to compensate the property owner for the "loss in value resulting from the permanent installation" of its facilities on the premises and does not require the operator to provide compensation for pecuniary loss. *See* 68 P.S. § 250.506–B(a). UCHC asserts that Article V–B does not require an operator to pay a property owner any type of access fee or percentage of revenue in exchange for the operator's use of the owner's property, and that CATV installation makes a multiple dwelling premises less attractive to satellite TV operators who would pay the owner an access fee or a percentage of revenues.

¶ 34 The guiding principle of just compensation under the takings clause of the Fifth Amendment is that the owner of the condemned property "must be made whole but is not entitled to more." *U.S. v. 564.54 Acres of Land*, 441 U.S. 506, 516, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979) (citation omitted). In order to satisfy the need for a relatively objective rule concerning just compensation for a taking, the United States Supreme Court has employed the concept of fair market value. *564.54 Acres of Land*, 441 U.S. at 511, 99 S.Ct. 1854. "Under this standard, the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking." *Id.* (citation omitted). Loss to a property owner of "nontransferable values deriving from his unique need for property or idiosyncratic attachment to it" is treated as part of the burden of common citi-

zenship, and is not generally compensated. *Id.* at 512, 99 S.Ct. 1854.[5]

¶ 35 The fair market value of property at the time of a taking is also the normal gauge of just compensation under the Pennsylvania Constitution. *Township of Chester v. Commonwealth, Dep't of Transp.*, 495 Pa. 369, 373, 433 A.2d 1353, 1354 (1981). A taking of property may not be measured by the loss of anticipated profits. *Sgarlat Estate v. Commonwealth*, 398 Pa. 406, 158 A.2d 541 (1960).

¶ 36 Under Article V–B, an operator is liable to the landlord for "any physical damage caused by the installation, operation or removal of CATV system facilities." 68 P.S. § 250.505–B. A landlord is also entitled to just compensation from the operator for the loss in value of the property resulting from the "permanent installation of CATV system facilities on the premises." 68 P.S. § 250.506–B(a). In determining reasonable compensation for the landlord, evidence of the following must be considered: (1) "that a landlord has a specific alternative use for the space occupied or to be occupied by CATV system facilities, the loss of which will result in monetary loss to the owner ..." and (2) "that installation of CATV system facilities upon such multiple dwelling premises will otherwise substantially interfere with the use and occupancy of such premises to an extent which causes a decrease in the resale or rental value thereof...." 68 P.S. § 250.506–B(c). Further, in determining the damages to a landlord under section 250.506–B, "compensation shall be measured by the loss in value of the landlord's property." *Id.* If there is an increase in value in the landlord's property resulting from the installation of CATV system facilities, that amount "shall be deducted from the compensation" due the landlord. *Id.*

¶ 37 Because Article V–B requires that a landlord be compensated for the loss in value of his property resulting from the CATV installation and for any damage to the landlord's property resulting from the installation, we find Article V–B consistent with the constitutional requirements of just compensation for a taking of property.

¶ 38 UCHC next argues that Article V–B required Adelphia to provide a proposal for CATV installation with its original notice to UCHC and that such a proposal was required before UCHC was obligated to allow Adelphia access to Radcliff House and Rosemont Plaza. UCHC contends that Adelphia's original letters did not specify an amount of compensation to be paid to UCHC, did not provide any details as to the nature of the work to be performed, and did not state the time period for installation or the amount of security to be provided. UCHC contends that these failures violated section 250.504–B, which provides:

> The original notice [to the landlord] shall be accompanied by a proposal outlining the nature of the work to be performed and including an offer of compensation for loss in value of property given in exchange for the permanent installation of CATV system facilities. The proposal also shall include a statement that the operator is liable to the landlord for any physical damage, shall set forth the means by which the operator will comply with the installation requirements of the landlord pursuant to section 505–B and shall state the time period for installation and security to be provided.

68 P.S. § 250.504–B. UCHC also contends that Adelphia did not advise it regarding the location where Adelphia intended to install the cables, wires, and equipment, the nature of the installation process, the method by which Adelphia would handle asbestos, if found, or how Adelphia would comply with OSHA regulations.

---

5. Fair market value will not be used as the sole measure of compensation when the market value is too difficult to determine or when its application would result in manifest injustice to the owner or to the public. *564.54 Acres of Land*, 441 U.S. at 512, 99 S.Ct. 1854.

¶39 Adelphia, in its December 2, 1994 letters to UCHC, stated that "[a]ll work shall be performed in a workmanlike manner in accordance with industry standards," that Adelphia would be "liable . . . for any physical damage to the . . . property caused by the installation of . . . cable facilities," that Adelphia "would reasonably compensate [UCHC] for any loss in value of their property given in exchange for the permanent installation of Adelphia Cable's CATV system facilities," that the compensation "will be limited to any loss in value to the . . . property resulting from any physical damage to, or destruction of, that property caused by the installation of Adelphia Cable's facilities," and that "[a]ll work shall be performed in a reasonable and timely fashion with the least amount of disruption possible." *See* Defendant's Supplemental Memorandum of Law, 11/20/98, Exhibits E, F.

¶40 In the December 2, 1994 letters, Adelphia also requested a meeting with UCHC representatives to discuss and finalize "the installation design and a Right-of-Way and Easement allowing Adelphia Cable access to [UCHC's] premises for purposes of installing that cable system." Adelphia indicated that it would begin installation within 90 days after it received the fully executed "Right-of-Way and Easement," and that Adelphia expected installation to take approximately 60 days to complete. Adelphia further stated that before the actual installation took place, it would conduct a pre-construction meeting to finalize the specific installation plan. Adelphia also stated that it would provide, as security, a "suitable performance bond" for the installation of the cable facilities at the two locations. Adelphia also explained to UCHC that an agreement between them would need to be finalized within 45 days. *Id.*

¶41 In interpreting statutes, a court must consider the principle that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S.A. § 1922(1). In the present case, Adelphia complied with the reasonable requirements of section 250.504–B because the December 2, 1994 letters (1) set forth the nature of the work to be performed, the time period for installation, and the type of security that would be provided, and (2) indicated that Adelphia would provide UCHC with compensation for the loss in value of UCHC's property, be liable to UCHC for any physical damage to the property, and conduct a pre-installation meeting to finalize all details of the installation plan. We reject, as did the trial court, UCHC's argument that Adelphia was required to provide further details to UCHC before acquiring access to the properties under Article V–B.

¶42 In conclusion, the record before us establishes that there is no material issue of fact present in this matter and that Adelphia was entitled to judgment as a matter of law. Thus, the trial court did not abuse its discretion or commit an error of law in granting Adelphia's Motion for Summary Judgment.

¶43 Order affirmed.