**A & L INVESTMENTS, a Pennsylvania General Partnership, Appellant,**

v.

**ZONING HEARING BOARD OF the CITY OF McKEESPORT**

v.

**City of McKeesport.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2003.

Decided Aug. 1, 2003.

---

Thomas J. Dempsey, Pittsburgh, for appellant.

Falco A. Muscante, Pittsburgh, for appellee, City of McKeesport.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Appellant A & L Investments appeals from an order of the Court of Common Pleas of Allegheny County (Trial Court) which affirmed an order of the Zoning Hearing Board of the City of McKeesport (Board) denying Appellant's request for a Zoning Certificate and Non–Residential Occupancy Certificate, and/or a Variance. We reverse.

A & L Investments and Albert Gottesman as owners, together with Mon Yough Community Services, Inc. as tenant (collectively, Mon Yough) applied to the City of McKeesport (City) for a Zoning Certificate and Non–Residential Occupancy Certificate for the use of a property at 539–541 Fifth Avenue (the Property) in the City, into which Mon Yough intended to move its therapy and educational classes for alcohol offenders. The Property is located within a C–3 Zoning District under the McKeesport Zoning Ordinance (Ordinance).

Mon Yough is a non-profit corporation funded primarily by Allegheny County that has multiple community service operations within the City. Mon Yough already operates an acute partial and social rehabilitation operation, and DNA support services, on the second floor of the Property. Mon Yough sought to consolidate its services into one location with its instant request, by moving its DUI and underage drinking offender classes into the Property. The DUI program has been located in the City's downtown area for over twenty

years, most recently at a location several blocks from the Property.

A hearing was subsequently held before the Board, at the conclusion of which the Board denied Mon Yough's request. Mon Yough's intended use for the Property—namely therapy and educational classes for DUI and underage drinking offenders as ordered by the Allegheny County court system—was held by the Board to not be a permitted use within the C–3 General Commercial Zoning District as specified in the Ordinance. The Board further held, upon motion before it, that a variance was not justified from the record of the case.

Mon Yough thereafter timely appealed the Board's order and decision to the Trial Court, which sustained the Board's order without taking additional evidence, by order dated October 29, 2002. Mon Yough now appeals the Trial Court's order.[1]

■ This Court's scope of review, when the trial court does not take any additional evidence in a zoning case, is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. *Chrin Brothers, Inc. v. Williams Township Zoning Hearing Board*, 815 A.2d 1179 (Pa.Cmwlth.2003).

Mon Yough first[2] argues that the Trial Court erred in applying a substantial evidence standard of review in determining whether Mon Yough's proposed use was a permitted use under the Ordinance. We agree.

In the proceedings before it, the Board concluded that Mon Yough's proposed use was not permitted in a C–3 Zoning District under the Ordinance. In its review of that Board conclusion, the Trial Court held that it could not disturb that determination if substantial evidence existed in the record in support thereof, and further held that it "cannot substitute its judgment for that of the Board" in determining whether Mon Yough's proposed use was permitted under the Ordinance. Trial Court Opinion at 2. In so holding, the Trial Court clearly erred as a matter of law.

■ A trial court's standard of review of a zoning hearing board's conclusion regarding the categorization of a proposed use has long been clearly and expressly established in our precedents. Whether determined from testimony or from the record of prior proceedings, the categorization of a proposed use in relation to zoning regulations is a question of law on which a zoning board's determination is fully subject to review. *Diversified Health Associated, Inc. v. Zoning Hearing Board of Borough of Norristown*, 781 A.2d 244 (Pa.Cmwlth.2001). The Trial Court's review of the Board's conclusion on this issue merely for evidentiary support thereof on the record, and its concomitant failure to make a legal judgment on this issue, was error.[3] As *Diversified* and the precedents

1. The City has joined the instant action, and filed a brief with this Court, as an Intervenor. The Board has not filed a brief with this Court.

2. Mon Yough's issues have been reordered and consolidated in the interest of clarity.

3. The City's reliance on *Ralph & Joanne's, Inc. v. Neshannock Township Zoning Hearing Board*, 121 Pa.Cmwlth. 83, 550 A.2d 586 (1988), for the proposition that a zoning board's finding as to the categorization of a use under a zoning ordinance cannot be disturbed on appeal if supported by substantial evidence, is misplaced. *Ralph & Joanne's, Inc.* addressed findings of fact based upon factual evidence of parking adequacy and patron attendance in relation to permitted uses, and did not involve categorization as a matter of law. As such, it is distinguishable from the instant matter, in which the facts of the proposed use are not disputed, but rather the categorization thereof under the Ordinance is the sole issue.

on which it is based make clear, the categorization of a particular proposed use under a zoning ordinance is a matter of law to be fully reviewed as such upon appeal. As the facts of Mon Yough's use are undisputed in the instant matter, the record sufficiently provides a basis for such a legal determination. Accordingly, this Court, in the wake of the Trial Court's error in its review, can and will examine the record for a determination on the use under the Ordinance as a matter of law. *Chrin Brothers.*

Mon Yough next argues that, under the Ordinance, its proposed use was a use expressly permitted as a public building or use in a C–3 Zoning District under the Ordinance. The Ordinance lists as a permitted use in a C–3 Zoning District, *inter alia*, "Public building or use". Ordinance at 24. "Public building or use" is defined in the Ordinance as:

> Building or facility operated by a governmental agency or philanthropic organization, where administrative activities are conducted or social or educational services are provided to the general public. Such uses shall include, but are not limited to, a municipal building, library, community center, museum, or similar use/facility, excluding a school or recreational facility, as defined by this Ordinance.

Ordinance at 133.

The Board concluded that Mon Yough's proposed use of the Property for therapy and educational classes could not be a public use because the classes were not intended for the general use of the public, but were limited to attendance by individuals whose participation in the program had been ordered by the Allegheny County court system. Board Opinion at 3. We disagree that the classes' limited scope of attendance precludes the use from categorization as a public use.

In *Swift v. Zoning Hearing Board of Abington Township*, 16 Pa.Cmwlth. 356, 328 A.2d 901 (1974), we examined the term "community center" as used in a local zoning ordinance in defining the permitted uses of a commercial zoning district that encompassed some, but not all, of the classifications and terms used in the Ordinance at issue in the instant matter. Although a public use as defined in the instant Ordinance was not at issue in *Swift*, we note the similarities between the two respective zoning districts, and the use of the term community center as a permitted use in *Swift* as well as the City's use of the same term in defining a public use under the instant Ordinance.

In *Swift*, the building at issue was proposed to be used by a non-profit organization formed to combat drug abuse through the education and counseling of, *inter alia*, non-resident addicts and former addicts. We examined this proposed use to discern similarities in the use's provision to the community of services similar to others designated as permitted, such as a public library or fire station, and found such similarities to exist. In affirming the trial court's conclusion that the proposed use in *Swift* was a permitted community center use whose benefit to the community through its services to its clientele was both obvious and laudable, we rejected the argument that the facility's service of individuals who were not living in the immediate locality somehow reduced its benefits to the local citizenry. *Id.*, 328 A.2d at 903. Although it is not dispositive in regards to the matter *sub judice*, we find *Swift's* reasoning to be persuasive.

Moreover, it has long been established under Pennsylvania law that a use may be public notwithstanding the fact that not every member of the public may participate in, or benefit from, the use. In the

arena of legislative land development programs, our Supreme Court has expressly held that there is no constitutional requirement that the entire public benefit from a program before that program can be termed public. *Basehore v. Hampden Industrial Development Authority*, 433 Pa. 40, 248 A.2d 212 (1968). Further, the Supreme Court has expressly stated that "[i]t is not essential that the entire community or even any considerable portion of it should directly enjoy or participate in an improvement in order to make its use a public one." *Id.* (citation omitted). Pennsylvania case law is rich with examples of uses held to be public in which not every member of the public may participate, or even benefit directly. *Accord: Shields v. City of Philadelphia*, 405 Pa. 600, 176 A.2d 697 (1962) (Little League baseball field is a public use notwithstanding the fact that not all city inhabitants would be able to use the field); *Jacobs v. Clearview Water Supply Co.*, 220 Pa. 388, 69 A. 870 (1908) (general public would benefit from eminent domain taking for private commercial and manufacturing purposes); *Dornan v. Philadelphia Housing Authority*, 331 Pa. 209, 200 A. 834 (1938) (the fact that only part of the community could occupy proposed low income properties would not prevent such use from being a public use where indirect public benefit exists); *Borough of Big Run v. Shaw*, 16 Pa.Cmwlth. 623, 330 A.2d 315 (1975) (condemnation was not without public benefit even though proposed road would serve only limited number of properties).

We can conceive of no cogent reason not to apply the approach taken in the collective foregoing precedents, in determining public uses, to the instant facts. Our conclusion that Mon Yough's proposed use is a public use is buttressed by the unquestionable public benefit[4] derived therefrom, notwithstanding the public's limited and conditional direct participation therein. As aptly stated by Mon Yough in its brief to this Court, the proposed use at issue is entirely consistent with Pennsylvania concepts of public use, and of the benefits derived therefrom, as a matter of law.

We hold, therefore, that Mon Yough's proposed use is a permitted public use under the Ordinance, and accordingly reverse the order of the Trial Court.[5]

### ORDER

AND NOW, this 1st day of August, 2003, the order of the Court of Common Pleas of Allegheny County dated October 29, 2002, at S.A. 01–1171, is reversed.

---

**4.** Notwithstanding the Board's, and the City's, puzzling failure to glean any public benefit from the proposed use, this Court believes that the education and rehabilitation of known alcohol-related offenders provides a societal benefit of the most obvious nature.

**5.** Our disposition of this issue renders further address of Mon Yough's remaining issues unnecessary.