# McGlaughlin v. Gettysburg Hospital

*Darryl W. Cunningham,* for plaintiffs.
*B. Craig Black* and *Robert McDermott,* for defendants.

GEORGE, *J.,* October 6, 2003—The plaintiffs in this matter, Michael S. McGlaughlin and Tammy J. McGlaughlin, asked this court to reconsider the September 5, 2003 order in which summary judgment was granted in favor of defendants, Dr. Gregory J. Codori and Dr. John Dufendach. In the alternative, McGlaughlin has requested this court amend the September 5, 2003 order to include a statement pursuant to 42 Pa.C.S. §702(b) allowing McGlaughlin to appeal the interlocutory order.[1]

---

1. 42 Pa.C.S. §702(b) provides:

"*Interlocutory appeals by permission.*—When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order."

Although the factual history of this matter is set forth at length in the opinion accompanying the September 5, 2003 order, a brief review of the procedural history will assist in disposition of McGlaughlin's requests.

On October 7, 1999, McGlaughlin initiated a medical malpractice action against Gettysburg Hospital and a number of physicians, including Dr. Codori and Dr. Dufendach.[2] Thereafter, the parties participated in discovery and trial preparation through December 3, 2002, at which time this court held a pretrial conference.[3] Following the pretrial conference, and upon agreement of counsel, trial was scheduled for a term beginning September 8, 2003. In compliance with a scheduling order this court entered, the defendants filed a motion in limine to preclude the expert testimony of McGlaughlin's two prospective medical experts, Dr. Thomas Howard and Dr. Peter G. Bernad. In their motion, defendants Dufendach and Codori successfully argued that these two prospective expert witnesses were incompetent to render expert opinions on the applicable standards of care pursuant to the requirements set forth in the Medical Care Availability and Reduction of Error Act (MCare) which was recently enacted on March 20, 2002. On September 5, 2003, this court entered an order granting defendants

---

2. The action against Gettysburg Hospital was based upon a theory of vicarious liability.

3. In early February of 2002, the insurance carrier for the several defendants, PHICO Insurance Company, filed bankruptcy proceedings. This court, on February 15, 2002, entered a stay pursuant to an order of the Pennsylvania Commonwealth Court docketed at 427 M.D. 2001. This court lifted the stay on October 23, 2002, as a result of pleadings the defendants filed.

Codori and Dufendach's motion to preclude the testimony of McGlaughlin's prospective experts on the applicable standards of care. Additionally, since the preclusion of these experts left McGlaughlin with the inability to establish the elements of medical malpractice action against Dr. Codori and Dr. Dufendach, summary judgment was granted in their favor.[4]

In the motion to reconsider, McGlaughlin does not challenge this court's interpretation of MCare provisions or its applicability to the proffered expert testimony but rather, for the first time, argues that the legislature's enactment of MCare is unconstitutional in light of Article V, Section 10, of the Pennsylvania Constitution.[5] For the

---

4. Similar omnibus pretrial motions were filed on behalf of defendant Dr. Rukhsana K. Rahman which were granted in part and denied in part. The claim against Dr. Rahman, however, was not dismissed pursuant to summary judgment. In the September 5, 2003 order, this court reserved ruling until the time of trial on whether Dr. Bernad may express an expert opinion in regard to the standard of care applicable to Dr. Rahman's actions. Rather than proceed to trial as scheduled against the remaining defendant doctor, McGlaughlin requested a continuance in order to allow an opportunity for the filing of a motion to reconsider and a request to have this matter certified for appeal. As a result, trial of McGlaughlin's remaining claim against Dr. Rahman and Gettysburg Hospital was continued at the call of either party.

5. Article V, Section 10, of the Pennsylvania Constitution provides: "Section 10. *Judicial administration.*

"(a) The Supreme Court shall exercise general supervisory and administrative authority over all the courts and justices of the peace, including authority to temporarily assign judges and justices of the peace from one court or district to another as it deems appropriate. . . .

"(b) *The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts,* justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of

reasons set forth below, McGlaughlin's constitutional challenge of MCare is denied.[6]

In considering McGlaughlin's constitutional challenge, I am mindful of appellate instruction that one who chal-

---

actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. *All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.*" Pennsylvania Constitution Article V, Section 10. (emphasis added)

6. McGlaughlin's motion to reconsider triggers consideration of issues related to waiver and procedural compliance with Pa.R.C.P. 235 (relating to notice to attorney general when a party challenges the constitutionality of a statute). Indeed, McGlaughlin's constitutional challenge to MCare was pled for the first time in the motion to reconsider despite extensive briefing and argument on the several defendants' motions in limine prior to the September 5, 2003 order. Similarly, as of the date of McGlaughlin's motion to reconsider, the Pennsylvania attorney general's office had not been provided notice of the challenge. It appears that on September 26, 2003, McGlaughlin, for the first time, provided notice of the challenge to the attorney general.

Although McGlaughlin's belated assertion of this issue is not favored and presents the potential for waste of judicial resources, appellate authority advises that "there is no requirement that grounds for a petition for reconsideration be raised during the trial or during the pretrial period. *Moore v. Moore,* 535 Pa. 18, 25 n.1, 634 A.2d 163, 167 n.1 (1993) (citing *Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board v. Willow Grove Veterans Home Association,* 97 Pa. Commw. 391, 509 A.2d 958 (1986); *Pedersen v. South Williamsport Area School District,* 80 Pa. Commw. 292, 471 A.2d 180 (1984)). While a strict waiver rule enunciated by our appellate courts would aid the efficient administration of justice, an exhaustive search for authority in this area has failed to reveal any such clear directive. Accordingly,

lenges the constitutionality of an act of the legislature must overcome "the strong presumption of constitutionality and the heavy burden of persuasion." *Commonwealth v. Mikulan,* 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983). Accordingly, legislation must *"clearly, palpably,* and *plainly"* violate the Constitution before it will be declared unconstitutional. *Snider v. Thornburgh,* 496 Pa. 159, 166, 436 A.2d 593, 596 (1981) (emphasis in original) (quoting *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 16, 331 A.2d 198, 205 (1975)).

The gist of McGlaughlin's argument is that MCare improperly encroaches upon the exclusive authority of the Pennsylvania Supreme Court to prescribe rules governing the "practice, procedure and conduct of all courts." Pennsylvania Constitution Article V, Section 10; see also, *Bergdoll v. Kane,* 557 Pa. 72, 731 A.2d 1261 (1999). Although referencing the Pennsylvania Rules of Evidence throughout his brief, McGlaughlin argues that MCare improperly sets forth procedural rules which invade the Supreme Court's exclusive rule-making author-

---

in the exercise of discretion, the issue will be considered despite the procedural posture within which it was raised.

The manner in which McGlaughlin raised the constitutional challenge most likely precipitated his noncompliance with Pa.R.C.P. 235. Although that rule requires notice of a constitutional challenge to the provisions of a statute be provided to the attorney general of Pennsylvania, it also provides exceptions for the court to proceed without prior notice. Additionally, our appellate courts have recognized that it is sufficient for a party to substantially comply with the requirements of this rule. *Adelphia Cablevision Associates of Radnor L.P. v. University City Housing Co.,* 755 A.2d 703, 709 (Pa. Super. 2000). In light of the procedural posture of this case, I will address McGlaughlin's issue on its merits noting that the attorney general has since been notified of McGlaughlin's challenge.

ity. The flaw in this argument, however, is that Mc-Glaughlin mistakenly characterizes MCare as a procedural rule rather than a rule of evidence.

Determination of whether MCare is purely procedural, as compared to a rule of evidence, is critical. As previously mentioned, the Pennsylvania Supreme Court possesses exclusive authority over procedural rule-making. *Bergdoll,* cited above. On the other hand, Pennsylvania has a "long-standing practice of establishing rules of evidence . . . by legislative action." *Coughlin v. Westinghouse Broadcasting and Cable Inc.,* 603 F. Supp. 377, 381 (E.D. Pa. 1985). Thus, while the legislature may not "tell the judiciary how to hear and dispose of a case," *Appeal of Borough of Churchill,* 525 Pa. Super. 80, 88, 575 A.2d 550, 554 (1990), the legislature may enact rules of evidence. The Superior Court recently succinctly stated this principle in *Commonwealth v. Presley,* 455 Pa. Super. 13, 19-20, 686 A.2d 1321, 1324-25 (1996), wherein they opined:

"Nevertheless, '[i]t is well settled that the legislature of a state has the power to prescribe new rules of evidence, providing that they do not deprive any person of his constitutional rights.' *Dranzo v. Winterhalter,* 395 Pa. Super. 578, 589, 577 A.2d 1349, 1354 (1990). . . . This principle was settled nearly 60 years ago, when our Supreme Court stated that '[w]e recognize the right of the legislature to create or alter rules of evidence.' *Rich Hill Coal Company v. Bashore,* 334 Pa. 449, 485, 7 A.2d 302, 319 (1939). More recently, the court reaffirmed this holding by stating that '[s]ubject only to constitutional limitations, the legislature is always free to change the rules governing the competency of witnesses and the admissi-

bility of evidence.' [*Commonwealth v. Newman,* 534 Pa. 424, 429, 633 A.2d 1069, 1071 (1993)]."

Appellate court efforts to define the meaning of procedural rules for the purpose of the exclusivity clause of the constitution have not altogether been successful perhaps because the line between procedural law and substantive law is often difficult to draw. "As threads are woven into cloth, so does procedural law interplay with substantive law." *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 57, 436 A.2d 147, 150 (1981). It is important, therefore, to determine MCare's purpose in order to properly characterize its nature. See *id.*

MCare is a comprehensive effort by the General Assembly to allow for fair compensation to those injured as a result of medical negligence, while attempting to maintain medical professional liability insurance at an affordable and reasonable cost. See 40 P.S. §1303.102. The section of MCare at issue addresses the competency of an expert to offer an expert medical opinion in a medical professional liability action. 40 P.S. §1303.512. One need look no further than the Pennsylvania Rules of Evidence, Pa.R.E. §101 et seq., to conclude that this section of MCare is a rule of evidence. For instance, Pennsylvania Rule of Evidence 601 relates to the competency of witnesses. Similarly, Pennsylvania Rule of Evidence 702 addresses expert witness testimony. Although McGlaughlin argues that the Pennsylvania Supreme Court's adoption of the Pennsylvania Rules of Evidence is indicative of the Supreme Court's exclusive authority in this area, that argument ignores the plain language of the rules of evidence. Pa.R.E. 601 unambiguously states

that "[e]very person is competent to be a witness *except as otherwise provided by statute* . . . ." Pa.R.E. 601. (emphasis added) Thus, the very rule the Supreme Court adopted under the authority of Article V, Section 10(c), of the Pennsylvania Constitution recognizes the legislature's authority to regulate in this area. *Id.;* see also, *Commonwealth v. Newman,* 534 Pa. 424, 429, 633 A.2d 1069, 1071 (1993) (stating the legislature is constitutionally authorized to enact rules governing witness competency). In accordance with the legislature's history of enacting rules of evidence as confirmed by the abundance of case law on this issue, I find that the legislature's enactment of MCare section 512, 40 P.S. §1303.512, is not an unconstitutional infringement upon the rule-making authority of the Pennsylvania Supreme Court.

In the alternative, McGlaughlin requested this court to certify the interlocutory order of September 5, 2003, for appellate consideration.[7] I will grant McGlaughlin's request in this regard.

The order in question addresses the applicability and interpretation of a recent legislative enactment, MCare section 512. 40 P.S. §1303.512. Due to the recency of the legislation, appellate courts have yet to consider the precise issue which the September 5, 2003 order addressed. One need look no further than the Lancaster

---

7. Although the court's grant of summary judgment in favor of Dr. Codori and Dr. Dufendach effectively ended the litigation in regard to those defendants, McGlaughlin's action against Dr. Rahman and Gettysburg Hospital survived summary judgment. Since the order did not dispose of the entire litigation, the order is interlocutory in nature. 42 Pa.C.S. §742; *Napet Inc. v. John Benkart & Sons Co.,* 288 Pa. Super. 187, 189-90, 431 A.2d 351, 352 (1981).

Court of Common Pleas decision in *Spotts v. Small,* 61 D.&C.4th 225 (Lancaster Cty. 2003)[8] to recognize that there is substantial ground for a difference of opinion in construing MCare section 512. Moreover, as evidenced by the grant of summary judgment, resolution of the issue presented a controlling question of law as it affected two out of three of the primary defendants. Proceeding to trial against the sole remaining primary defendant prior to appellate consideration of the subject issue may result in duplication of trial and a waste of judicial assets. Thus, immediate appellate consideration of the September 5, 2003 order will materially advance the ultimate determination of this litigation.

For the foregoing reasons, the attached order is entered.

## ORDER

And now, October 6, 2003, the plaintiffs' motion for reconsideration is denied. However, the plaintiffs' request for amendment of the September 5, 2003 order is granted. The September 5, 2003 order is amended to include the following:

"The court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal from this order may materially advance the ultimate determination of the matter."

In all other respects, the September 5, 2003 order is confirmed.

---

8. In *Spotts,* the Lancaster Court of Common Pleas reached a contrary result in considering the identical issue presented to this court.