617 A.2d 74

**In re Condemnation of Land Along Woodside Road as an Extension of Maplewood Drive in the Township of Frankstown, County of Blair, Pennsylvania, by the Township of Frankstown, a Township of the Second Class.**

**Appeal of David R. HEIM and Pauline M. Heim, his wife, and John H. Meloy and Eugeania K. Meloy, his wife, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Dec. 20, 1991.

Decided Nov. 13, 1992.

Robert P. Rea, for appellants.

Charles Bruno, for appellees.

Before CRAIG, President Judge, KELLEY, J., and LORD, Senior Judge.

KELLEY, Judge.

This is an appeal from the dismissal of certain preliminary objections in a condemnation proceeding.

On June 5, 1990, the Township of Frankstown in Blair County, a township of the second class, enacted a resolution authorizing the condemnation of a strip of land to be used as an access road for a new residential development. The resolu-

tion also authorized the execution of an agreement with the two couples who were responsible for the new development, Gary A. Raymond, Donna L. Raymond, Alan J. Kivitz, and Vicky Sommer Kivitz (developers).[1] The agreement provided that developers would bear the costs of the condemnation.

On July 9, 1990, the township filed a declaration of taking in the Court of Common Pleas of Blair County (trial court). The condemnees named in the notice of declaration of taking are David R. Heim, Pauline M. Heim, John H. Meloy, and Eugeania K. Meloy.[2]

The access road of the condemnation had previously appeared over twenty-one years ago on the plan for the development in which condemnees live, the "Rhody plot", but had never been opened.

Condemnees filed preliminary objections in the trial court. The trial court heard arguments on a preliminary objection attempting to disqualify the law firm acting as counsel for the township. Subsequently the trial court issued an order dismissing that preliminary objection. After holding an evidentiary hearing, the trial court dismissed the remaining preliminary objections. This appeal followed.

■■■■ In eminent domain cases, our scope of review is limited to determining whether· the trial court abused its discretion or committed an error of law. *Speicher Condemnation Appeal*, 58 Pa.Commonwealth Ct. 321, 428 A.2d 282 (1981). The trial court is itself limited in its review of the municipality's decision to condemn property and of the extent of the taking, to the question of whether the municipality is guilty of fraud, bad faith or abuse of discretion. Furthermore, there is a strong presumption that the municipality has acted properly and the burden is heavy upon one attempting to show an abuse of discretion. *Pidstawski v. South Whitehall Township*, 33 Pa.Commonwealth Ct. 162, 380 A.2d 1322 (1977).

1. The agreement which was executed will be referred to as the "development agreement".

2. The notice also names the developers as condemnees. For the purposes of this opinion, we will use the term "condemnees" to refer to the Heims and the Meloys.

Condemnees present an array of issues which we will treat seriatim.

■ Condemnees first argue that the law firm representing the township should be disqualified. Under the terms of the development agreement, the township and developer agreed that an attorney hired by the developer would act as special solicitor for the township in the condemnation proceeding. Condemnees argue that this creates a conflict of interest because the attorney represents both the township and the developer. However, condemnees cannot point to any way in which the township's and the developers' interests conflict in the condemnation proceeding, nor to any way in which condemnees are prejudiced by this arrangement. Condemnees also fail to cite any authority for the proposition that this arrangement is improper. We hold that the trial court did not err in declining to disqualify the law firm representing the township.

■ Condemnees next argue that the declaration of taking is invalid because it was based upon a resolution enacted by the township and not an ordinance. Condemnees cite no caselaw to support this argument, and they provide no reasons in their brief to support the idea that a resolution was improper in this instance. To resolve this issue, we have only to look to *Jordan Appeal*, 73 Pa.Commonwealth Ct. 572, 459 A.2d 435 (1983), where this court held that a borough could authorize a declaration of taking with a resolution. In so holding we noted that, although The Borough Code[3] requires the enactment of an ordinance for the opening of a street,[4] the code does not specify what procedure should be used to authorize the taking of the land for the street. We also noted the language of section 402(b)(3) of the Eminent Domain Code[5] which states that a declaration of taking requires a "specific reference to the action, whether by ordinance, resolu-

3. Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501.

4. Section 1731 of The Borough Code, 53 P.S. § 46731.

5. Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1-402(b)(3).

tion or otherwise, by which the declaration of taking was authorized. . . ." The present case is analogous in that there is no provision in The Second Class Township Code [6] specifying what procedure should be used to authorize the taking of land for a street.

Condemnees argue that all of the property owners in the Rhody plot should have been named as condemnees because the road to be opened originally appeared in the plan for the Rhody plot. Where a municipality fails to accept or open a dedicated street in a plan within twenty-one years, the owners of property within the plan or subdivision retain private rights of easement by implication over the unopened streets. *Estojak v. Mazsa,* 522 Pa. 353, 562 A.2d 271 (1989); *Potis v. Coon,* 344 Pa.Superior Ct. 443, 496 A.2d 1188 (1985). Condemnees argue that those additional lot owners should therefore have been named as condemnees because they have a protectable property interest in the strip of land condemned.

We hold that the trial court did not err in concluding that the additional lot owners did not have to be named as condemnees. The term "condemnee" is defined in the Eminent Domain Code as "the owner of a property interest taken, injured or destroyed. . . ." [7] In this case, the easements of the additional lot owners will continue to exist over the opened road, just as they existed over the unopened road. The additional lot owners therefore do not have a property interest which has been taken, injured or destroyed.

Furthermore, the township cites 36 P.S. § 1961 [8] which states that, after twenty-one years, the roads which appear in a plan have no effect and shall not be opened without the consent of the owners on whose land the road will be laid out. The owners who must consent are the owners whose property abuts the unopened road. *Rahn v. Hess,* 378 Pa. 264, 106 A.2d 461 (1954). Thus if the condemnees in the present case had consented to the road being opened, the additional lot

6. Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §§ 65101–67201.

7. 26 P.S. § 1–201.

8. Act of May 9, 1889, P.L. 173.

owners would not be able to prevent the township from so doing. Since the additional lot owners do not have a property interest sufficient to prevent the road from being opened with the consent of the abutting landowners, the fact that the abutting landowners do not consent does not extend the property interest of the additional lot owners.

Condemnees next argue that the township did not have the right to take the land for a second access road to the development because the township's subdivision ordinance requires only one access road to a development. The township responds by arguing that this issue does not fall within the issues which may be raised by preliminary objections under section 406(a) of the Eminent Domain Code,[9] and that the issue should have been raised during the proceedings relating to the approval of the subdivision plan. We need not address the township's argument because our review of the subdivision ordinance as contained in the record reveals no language stating that only one accessway is required to a development. The trial court did not err in dismissing this preliminary objection.

█ Condemnees argue that the township is prohibited from condemning the land in question because the opening of a road on that land will result in their homes being closer to the road than the township's zoning ordinance permits. In addressing this issue, we must again look to *Jordan Appeal* which distinguishes between the taking of land for a road and the actual opening of the road. These are two separate actions of the municipality. We agree with the trial court that the condemnation of the land cannot arguably violate the zoning ordinance. It is clear that a challenge to the ordinance opening the road is the proper vehicle for this argument. Although at present the taking resolution—by means of its references to alignment and width, to the center line of Maplewood Drive in the subdivision plan, and by means of a metes-and-bounds description—indicates the *maximum* dimensions of the proposed road, the actual final dimensions of

9. 26 P.S. § 1–406(a).

that road in relation to zoning restrictions will not be known until an ordinance to open it has been introduced.[10]

 Condemnees argue that the declaration of taking was invalid because it was for a private purpose. This argument is based on the allegation that developers are the beneficiaries of this condemnation, as evidenced by the fact that, pursuant to the development agreement, developers agreed to pay all costs of the condemnation proceedings. Condemnees go on to argue that the township had no authority to enter into the development agreement.

 A taking does not lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefitted. *Washington Park, Inc. Appeal,* 425 Pa. 349, 229 A.2d 1 (1967); *Matter of Township of Upper St. Clair,* 138 Pa.Commonwealth Ct. 321, 587 A.2d 907 (1991). In *Washington Park,* the Department of Transportation (DOT) had an agreement with a private party, Southgate Shopping Center, Inc., by which Southgate agreed to indemnify DOT for its liability to a condemnee arising out of the condemnation. In holding that such an agreement was not improper, the court cited a statute authorizing DOT to enter into contracts with private parties for the purpose of sharing the costs of construction of highways. That statute, however, did not explicitly mention indemnification for the costs of a condemnation proceeding to secure the property on which a highway was to be constructed, and the court went on to state the following:

It is beyond dispute that Southgate would benefit immensely from the contemplated improvements and accordingly was directly interested in the progress of the Commonwealth's plans. However, the Commonwealth's ability, because of this interest, to defray a considerable portion of the cost in no way casts any doubt upon the legality of the taking. It is worth repeating the observation of the court

10. We must note that we express no opinion as to the merit of condemnees' argument.

below that 'there was not one scintilla of evidence of fraud, corruption or misfeasance.'

*Id.* 425 Pa. at 356, 229 A.2d at 5. Condemnees would have us declare that an agreement between a municipality and a developer by which the developer agrees to assume all of the expenses incident to the condemnation of property necessary to the development, including the expense of hiring an attorney to pursue the condemnation, is per se improper. We can see no reason to make such a holding. Indeed, such an agreement is quite logical in that it benefits the taxpayers of the municipality by shifting the costs onto the developer. Pursuant to the discussion by the Supreme Court above, we decline to hold that the taking in the present case was for a private purpose.

Condemnees argue that the letter of credit provided by the developers is insufficient because section 403 of the Eminent Domain Code [11] requires that security be given by the condemnor. In *Condemnation Proceeding Redevelopment Authority of Philadelphia*, 19 Pa.Commonwealth Ct. 272, 339 A.2d 885, *cert. denied*, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975), this court held that the condemnees had a right to challenge, by preliminary objection, the sufficiency of security provided by a private developer pursuant to an agreement between the developer and a redevelopment authority. The

11. 26 P.S. § 1–403. That section reads as follows:

(a) Bond. Except as hereinafter provided, every condemnor shall give security to effect the condemnation by filing with the declaration of taking its bond, without surety, to the Commonwealth of Pennsylvania for the use of the owner or owners of the property interests condemned, the condition of which shall be that the condemnor shall pay such damages as shall be determined by law.

(b) Power of Taxation. Where a condemnor has the power of taxation, it shall not be required to file a bond with the declaration of taking. The funds raised, or lawful to be raised, by the power of taxation of the condemnor shall be deemed pledged and are hereby made security for the payment of the damages as shall be determined by law.

(c) Insufficient Security. The court, upon preliminary objections of the condemnee under and within the time set forth in section 406(a), may require the condemnor to give such bond and security as the court deems proper, if it shall appear to the court that the bond or power of taxation of the condemnor is not sufficient security. (Footnote omitted.)

court went on to hold that the security was in fact sufficient. Although condemnees in that case do not appear to have been arguing that it was improper for the developer to provide the security, in holding that the security was sufficient, this court implicitly accepted the propriety of such an arrangement. We see no reason to hold differently here. Our concern is that sufficient funds are available for the payment of condemnation damages; our concern is not with the source of those funds.

We also note that under section 403(b) of the Eminent Domain Code, the township, as an entity with the power of taxation, is not required to file a bond with the declaration of taking. Instead, the tax revenues raised or to be raised by the township are deemed to be pledged as security of the payment of the damages. Under section 403(c), a condemnee may challenge, by preliminary objection, the sufficiency of the power of taxation as security, and the trial court may require the condemnor to give such bond and security as the court deems proper. Although condemnees in the present case have challenged the propriety of developers providing security, our review of condemnees' preliminary objections reveals that they have not alleged that the power of taxation of the township is not sufficient security.

 Condemnees next argue that the action of the township in filing the declaration of taking was arbitrary, capricious and in bad faith. Part of condemnees' argument in this regard is a rehash of their prior arguments (e.g., condemnees argue that the township's requirement of two accessways to the subdivision when only one is required under the subdivision ordinance is evidence that the township's actions were arbitrary, capricious and in bad faith). We will not repeat our disposition of those earlier arguments. Condemnees also argue that the supervisors of the township told condemnees and others that they did not have to worry about the road being opened, and that this establishes that the township acted in bad faith. Our review of testimony at the hearing before the trial court reveals that what the supervisors told condemnees at a township meeting was that the supervisors had no right to open the road because twenty-one years had passed since the

recording of the Rhody plot. There is nothing in the record to indicate that the supervisors made any sort of promise that they would not take the land by eminent domain at some point in the future, and we therefore do not see any bad faith.

Lastly, condemnees argue that the township is estopped or prevented by laches from filing the declaration of taking. Condemnees again refer to their prior arguments in making their final argument, but they do not explain how those arguments relate to the elements of estoppel or laches. Indeed, condemnees do not even discuss the elements of estoppel or laches. Our Supreme Court recently stated that the elements of estoppel are 1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel. *Chester Extended Care Center v. Department of Public Welfare*, 526 Pa. 350, 586 A.2d 379 (1991). Laches is an equitable doctrine which depends on both inexcusable delay and prejudice to the other party. *Richland Township Planning Commission v. Bobiak*, 122 Pa.Commonwealth Ct. 624, 552 A.2d 1143 (1989). The only conduct discussed by condemnees which relates to the elements of estoppel or laches is, again, the allegation that the supervisors made some sort of promise not to open the road. We again note that the supervisors did not promise that they would not attempt to take the land by eminent domain. In any event, condemnees have not alleged any prejudice or reliance on this alleged promise.

For the foregoing reasons, the order of the trial court dismissing condemnees' preliminary objections is affirmed.

## ORDER

NOW, this 13th day of November, 1992, the order of the Court of Common Pleas of Blair County, dated April 17, 1991, at No. 90 CP 1288, is affirmed.