**READING AREA WATER AUTHORITY,**
Appellant

v.

**The SCHUYLKILL RIVER GREEN-WAY ASSOCIATION and Bern Township.**

Commonwealth Court of Pennsylvania.

Argued May 15, 2012.

Decided July 30, 2012.

Reconsideration Denied Sept. 18, 2012.

Nicole L. Plank and Matthew M. Setley, Wyomissing, for appellant.

Carl J. Engleman, Jr., Reading, for appellee The Schuylkill River Greenway Association.

Josele Cleary, Lancaster, for appellee Bern Township.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEADBETTER.

The Reading Area Water Authority (RAWA) appeals from the order of the Court of Common Pleas of Berks County (trial court) sustaining the preliminary objections of Appellees, the Schuylkill River Greenway Association (the Greenway) and Bern Township (the Township), and dismissing the Declaration of Taking filed by RAWA. We reverse and remand.

This appeal arises from the condemnation of land in Bern Township, Berks County, for the construction, maintenance and operation of utility lines and appurtenance of a water main. Appellees' property[1] is a strip of land which runs along the Schuylkill River on one side and adjoins property owned by Fortune Development, L.P. (Fortune) on the other. Fortune is the developer of a proposed 219–unit adult residential subdivision known as Water's Edge Village.

On February 9, 2009, RAWA adopted Resolution No. 2009–2 (RAWA Resolution), which authorized RAWA to exercise its eminent domain power to condemn a utility easement across the Greenway's property. The RAWA Resolution stated that the utility easement would be used for water, sewer and storm water purposes. The RAWA Resolution also provided that Fortune would be responsible for all costs associated with the eminent domain proceeding including any amount of just compensation. On July 27, 2009, the Reading City Council adopted Resolution No. 91–2009 (Council Resolution)[2] which authorized RAWA "to acquire an easement of sufficient size to accommodate certain sanitary sewer facilities and certain storm water facilities, in addition to water lines of the [RAWA]." Reproduced Record (R.R.) at 31a. On May 4, 2010, RAWA filed a Declaration of Taking (the Declaration) to condemn a permanent easement fifty-feet wide and approximately 133 feet long across the Greenway's land, "to construct, maintain, [and] operate utility lines and appurtenance of a water main to be placed under the Schuylkill River for water, sewer and storm water purposes." Declaration at ¶ 6; R.R. at 2a. The water main will travel west from Ontelaunee Township under the Schuylkill River then under the Greenway's property to the Fortune development. The sewer main will travel south from a package treatment plant on Fortune's property and intersect with the storm water management pipe, which drains a water retention basin. The sewer main and the storm water pipe combine into a single pipe which travels west under Fortune's property and then under the Greenway's property, coming out through a concrete headwall constructed over a six foot downward slope and discharging the effluent into a riparian buffer zone area along the Schuylkill River.

Appellees filed preliminary objections and a supporting brief arguing that the taking was invalid, asserting that the size of the proposed easement is larger than necessary to accommodate RAWA's water line, a service that all parties agree is a

---

1. The Greenway is the record owner of the property and the Township is the equitable owner. The Township intends to build a walking trail as part of the Schuylkill River Trail on the land at issue.

2. RAWA is authorized only to engage in projects related to waterworks, water supply works or water distribution systems. A resolution of the Reading City Council was necessary to authorize the use of eminent domain powers in the acquisition of land to be used for sanitary sewer lines and storm water facilities in addition to RAWA water lines. R.R. at 47a.

public use appropriately provided by RAWA, and the condemnation violates Section 204(a) of the Private Property Protection Act, 26 Pa.C.S. § 204(a), which prohibits the taking of private property in order to use it for private enterprise.[3] RAWA filed an answer to the preliminary objections and a brief, asserting that the preliminary objections should be overruled because RAWA had the authority to condemn the land pursuant to statute. Thereafter, the Township was permitted to intervene by agreement of the parties.

On August 31, 2010, the trial court held a hearing. Appellees offered the testimony of the Township Manager, Brian Potts, who primarily testified regarding the possible detrimental effects that the easement would have on the construction of a walking trail that the Township intends to construct. The trial court also heard oral argument on the preliminary objections. Appellees clarified that they were not disputing RAWA's right to condemn a thirty-foot easement for installation of water lines, but were disputing RAWA's authority to condemn land for the installation of sewer and storm water lines, an end wall, grading, and other improvements. August 21, 2010 Hearing, Notes of Testimony (N.T.) at 30. Appellees argued that the taking was excessive with regard to the storm water management facilities and the "privately-owned sanitary facilities" as the taking of land for these facilities would be purely for the benefit of a private enterprise. *Id.* at 34. RAWA argued that the provision of water and sewer services are inherently public purposes and that RAWA had obtained from the Reading City Council all the necessary authorizations required to exercise eminent domain powers for purposes stated in the Declaration.

On June 30, 2011, the trial court issued an order sustaining the preliminary objections. RAWA filed a timely appeal to this court. The trial court, in a subsequently filed opinion, stated that the preliminary objections were properly sustained because RAWA was taking private property to serve a private enterprise and the size of the easement sought was not reasonably related to RAWA's only public purpose, the provision of water. The trial court concluded that the "primary and paramount benefactor of the proposed condemnation" for sewer and storm water facilities was Fortune and not the general public and that the "fifty-foot wide easement was excessive in size, as half of that land would be used for private sewage and stormwater facilities." Trial Court Opinion at 4–5; R.R. at 66a–67a. The trial court stated that "[u]nder the guise of expanding their customer base and providing water to the public, RAWA is attempting to achieve its true goal and take land from one private owner and give it to another." *Id.* at 6; R.R. 68a.

■ RAWA appeals to this court, asserting that the trial court erred in sustaining the preliminary objections because the condemnation of property to provide all three facilities, water, sewer and storm water, is inherently a public use and any benefit accruing to a private developer does not strip the condemnation of its public nature. We agree.

The trial court relied upon *Bell Atlantic Mobile Systems, Inc. v. Zoning Hearing Board of the Township of O'Hara*, 676 A.2d 1255 (Pa.Cmwlth.1996). *Bell Atlantic* is not an eminent domain case, but rather a zoning case construing the scope of an existing easement. The easement specifically granted access only for the

---

**3.** Appellees also argued that the bond attached to the Declaration was inadequate.

The trial court did not address this preliminary objection.

purpose of constructing and maintaining a municipal water system. Bell Atlantic sought to use the easement to construct and operate a cellular telephone system. This Court found the proposed use was not within the scope of the easement's original purpose, water supply, because the proposed use, cell phone tower antenna, was not related to water supply. *Id.* at 1270.

The trial court also relied upon *In re Condemnation by the Beaver Falls Municipal Authority*, 960 A.2d 933 (Pa. Cmwlth.2008). In *Beaver Falls*, a dispute arose between a landowner and an authority constructing a water tank, ancillary facilities and an access road pursuant to an easement agreement. The authority failed to stockpile the excess soil in the location designated by the landowner as required by the easement agreement. Thereafter, the authority filed a declaration of taking condemning five acres of land in fee simple so that the authority would not be required to relocate the excess soil. The trial court sustained the preliminary objections, finding that the taking far exceeded the estate reasonably required for the project's purpose. *Id.* at 938. The trial court determined the authority's reasonable needs consisted of an access road to the water tank and storage area to stockpile the excess soil and that those needs were satisfied by the water line easement agreement. *Id.* This Court affirmed, rejecting the authority's attempt on appeal to reframe the issue as a question of the propriety of the stated purpose of the taking rather than a question of the excessiveness of the taking. *Id.* at 940.

The trial court concluded that just as wireless services in *Bell Atlantic* were not related to the authority's public purpose regarding the water system, so too Fortune's sewer and storm water facilities are not related to RAWA's stated public purpose. The trial court relied upon *Beaver*

*Falls* to conclude that RAWA overreached and took more land than necessary to effectuate its stated purpose and that the taking was excessive because the "twenty feet [was] being condemned for private stormwater facilities" and "privately-owned sanitary facilities." Trial Court's Opinion at 8; R.R. at 70a.

The trial court's reliance upon *Bell Atlantic* and *Beaver Falls* is misplaced. In the present case, RAWA's stated purpose is for the installation of a water main and utility lines as reflected by the Declaration. Thus, the scope of the project as stated by the Declaration encompasses the provision of water services and combined sewer and storm water management facilities. RAWA is authorized by law to use its power of eminent domain to condemn land for the provision of water and sewer facilities. Section 5607(d)(15) of the Municipal Authorities Act, 53 Pa.C.S. § 5607(d)(15), grants the power of eminent domain to municipal authorities. Municipal authorities are authorized by Section 5607(a)(10), 53 Pa.C.S. § 5607(a)(10), to acquire, hold, construct, finance, improve, maintain and operate, own or lease waterworks, water supply works, and water distribution systems. Section 5607(a)(5), 53 Pa.C.S. § 5607(a)(5), grants municipal authorities the same powers with regard to sewers and sewer systems. Section 5615(a)(1), 53 Pa.C.S. § 5615(a)(1), limits the power of eminent domain to acquisition of interests in lands that "the authority deems necessary for any of the purposes of this chapter." Although the Municipal Authorities Act does not list construction of storm water management facilities among the types of projects enumerated in Section 5607(a) (Scope of projects permitted), this issue does not affect the outcome of this case, as in the easement the proposed storm water outflow is combined in the same pipeline conveying sewage effluent treated to a high degree and suitable for

stream discharge. Further, as required by its articles of incorporation, RAWA obtained authorization through the Council Resolution to engage in a project larger in scope than only waterworks, water supply or water distribution systems.

Nonetheless, a municipal authority may only exercise eminent domain powers to condemn property for public use. Pa. Const. Art. I, § 10; Section 204(a) of the Eminent Domain Act, as amended by the Property Rights Protection Act, 26 Pa.C.S. § 204(a); *In re Bruce Ave.*, 438 Pa. 498, 266 A.2d 96 (1970). A proper public purpose [4] exists only where the public is the primary and paramount beneficiary of the taking. *Bear Creek Twp. v. Riebel*, 37 A.3d 64 (Pa.Cmwlth.2012). A taking "does not lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited." *Washington Park, Inc. Appeal*, 425 Pa. 349, 353, 229 A.2d 1, 3 (1967) (citations omitted). An objector has a heavy burden to show a taking is for a private use and not public benefit, as there is a strong presumption that the condemnor has acted properly. *In re Condemnation of Property of Waite*, 163 Pa.Cmwlth. 283, 641 A.2d 25 (1994).

The trial court summarily characterized the sewer and storm water management facilities as "private" and determined that the public is not the primary beneficiary of the RAWA's exercise of eminent domain because Fortune would significantly benefit from the taking. Both this Court and the Legislature have stated that the exercise of the powers of eminent domain to construct or acquire sewers and storm wa-

ter systems may constitute a public purpose. *Condemnation of a Permanent Right-of-Way*, 873 A.2d 14 (Pa.Cmwlth. 2005) (municipal authority may use eminent domain to acquire portion of existing private sewer system); *In re Proceeding by the Twp. of E. Hanover*, 701 A.2d 313 (Pa.Cmwlth.1997) (eminent domain may be used to acquire land for construction of sanitary sewers); *In re: Twp. of Upper St. Clair*, 138 Pa.Cmwlth. 321, 587 A.2d 907 (1991) (municipality may exercise eminent domain powers to acquire land to build sewers and utilities); Section 1702 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 66702 (second class township may acquire by eminent domain existing storm water management facilities); Section 2801 of The Third Class City Code, Act of June 23, 1931, P.L. 932, as amended, 53 P.S. § 37801 (third class cities may use eminent domain to acquire land to construct storm water drains).

In this case, RAWA is not transferring title from one private entity to another, but is taking property from the Greenway to hold publicly for the purpose of providing water services and to facilitate the construction of sewer and storm water management facilities. Although there is no indication in the record whether or not the sewer and storm water facilities will eventually be dedicated to RAWA, there also is no indication that RAWA intends to relinquish ownership of the easement. Fortune is constructing these facilities at its own cost, providing sewer and storm water management to those members of the public who will live in the development.[5] While the availability of these utili-

---

4. Pennsylvania courts equate "public use" with "public purpose." *Middletown Twp. v. Lands of Stone*, 595 Pa. 607, 939 A.2d 331 (2007).

5. Appellees rely upon *Bear Creek Township v. Riebel*, 37 A.3d 64 (Pa.Cmwlth.2012), for the proposition that eminent domain powers cannot be used when the primary purpose is to

ties will undoubtedly make the homes built by Fortune more attractive to potential buyers, such an incidental benefit to Fortune does not strip the project of its public purpose, to wit, providing water, sewer and storm water management to citizens living in RAWA's service area. *In re Condemnation of Land Along Woodside Road,* 151 Pa.Cmwlth. 438, 617 A.2d 74 (1992) (rejecting the argument that development agreement wherein developer agreed to assume all costs incident to the condemnation strips taking of its public purpose and endorsing such cost shifting agreements). Accordingly, we conclude that RAWA properly exercised its powers of eminent domain.

For all of the foregoing reasons, we reverse and remand to the trial court for disposition of the remaining preliminary objections.

Senior Judge COLINS dissents.

### ORDER

AND NOW, this 30th day of July, 2012, the order of the Court of Common Pleas of Berks County is hereby REVERSED and the matter is REMANDED for further proceedings.

Jurisdiction relinquished.

benefit a private enterprise. *Bear Creek* involved the construction of a charter school and recreational facilities. This Court found that the township was not authorized under Section 2201 of The Second Class Township Code, 53 P.S. § 67201, which permits the use of eminent domain to acquire land for recreational purposes, to condemn land to build a charter school because the project was unrelated to recreation. 37 A.3d at 69. Further, no provision of the Second Class Township Code permitted the use of eminent domain to construct a school. *Id.* Appellees argue that

RAWA has acted in the same manner as Bear Creek Township because the RAWA resolution states that it is condemning "to provide a utility easement to Fortune." *Bear Creek* is distinguishable in that the court found that the recreational purpose was pretextual and the actual purpose was for construction of a private charter school. Here, RAWA does not seek to use the easement for an unauthorized purpose. The fact that storm water flows through the sewage line does not change or negate the line's purpose as a sewer.