IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation of a Permanent : 
Right-of-Way, Temporary Construction :
Easement and Sight Line Easement :
Over Lands Now or Late of Neil B. :
Sagot and Eric Sagot Tax Map Parcel :
No. 02-037-066 Consisting of :
approximately 2,554 square feet of :
land, more or less :
  :
In Re: Condemnation of a Permanent : No.  138 C.D. 2015
Right-of-Way, Temporary Construction :
Easement Over Lands Now or Late of : Argued:  October 5, 2015
Andrew R. Krassen Tax Map Parcel :
No. 02-037-064 Consisting of :
approximately 3,056 square feet of :
land, more or less :
  :
In Re: Condemnation of a Permanent :
Right-of-Way, Temporary Construction :
Easement and Sight Line Easement :
Over Lands Now or Late of Chester :
Miscerewicz and Lisa Miscerewicz :
Tax Map Parcel No. 02-037-065 :
Consisting of approximately 2,034 :
square feet of land, more or less :
  :
In Re: Condemnation of a Permanent :
Right-of-Way Over Lands Now or Late :
of Francis P. Mooney and Rita Mooney :
Tax Map Parcel No. 02-037-085-001 :
Consisting of approximately 3,646 :
square feet of land, more or less :
  :
Appeal of: Neil B. Sagot and Eric :
Sagot, Rita Mooney, Francis P. Mooney :
having predeceased service of the :
Declaration of Taking, Chester :
Miscerewicz and Lisa Miscerewicz :
and Andrew R. Krassen :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                    FILED:  December 18, 2015


Neil and Eric Sagot, Andrew Krassen, Chester and Lisa Miscerewicz, and Francis and Rita Mooney (together, Condemnees) appeal from the December 19, 2014 order of the Court of Common Pleas of Bucks County (trial court), which overruled with prejudice their preliminary objections to a declaration of taking filed by Bensalem Township (Township) for a permanent easement and related temporary construction and sight line easements for the installation of sidewalks on Condemnees' properties.


**Facts/Procedural History**

The underlying facts of this case are not in dispute.  The Township is a township of the second class possessing the authority to condemn private property for appropriate public uses under The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65101 – 68701.  On December 17, 2012, the Township adopted Resolution 2012-17 (Resolution), stating its intent to make certain roadway improvements, including the installation of sidewalks, at or near the intersection of Byberry and Mechanicsville Roads.  Mechanicsville Road is a state highway maintained by the Pennsylvania Department of Transportation (DOT) and Byberry Road is a Township road maintained by the Township.  Condemnees Sagot,

Krassen, and Miscerewicz are adjoining landowners located on a one-tenth mile stretch of Mechanicsville Road between Byberry Road and a strip mall that borders Street Road to the west. Condemnee Mooney owns land around the corner on Byberry Road. Regent's Glen, an over-55 community, sits just east of Condemnee Mooney's property on Byberry Road and is fronted by a sidewalk. The residents of Regent's Glen signed a petition requesting connecting sidewalks on Mechanicsville and Byberry Roads so that they could access a grocery store in the strip mall along Mechanicsville Road without having to drive their cars.

The Resolution stated that it would be necessary for the Township to obtain permanent rights-of-way, sight line easements, and temporary construction easements across certain real properties for the construction of these improvements. While the Resolution stated that the Township would first attempt to negotiate the acquisition of these rights-of-way and easements, the Resolution authorized the Township to exercise its power of eminent domain to condemn the necessary property interests for this project. The Resolution identified the specific amount of property to be taken from each of eleven different landowners, including Condemnees, necessary to complete the improvements.

At this same meeting, the Township also authorized the execution of an agreement with the Parx Casino to underwrite much or all of the costs of the improvements. The Parx Casino is located northwest of Condemnees' properties and can be accessed via a rear entrance near the intersection of Byberry and Mechanicsville Roads. Prior to the construction of the casino, the Parx Casino and DOT entered into an agreement providing that the Parx Casino would be responsible for the funding of a road widening project, undertaken by DOT, at Byberry and Mechanicsville Roads. This project included a taking of approximately ten feet of

2

each of Condemnees' properties for the widening of Mechanicsville Road and the installation of a drainage system, but did not include sidewalks.

On February 27, 2013, the Township filed separate declarations of taking with respect to each of the Condemnees, citing its eminent domain power and authorization from the Resolution. The stated purpose of the condemnation was for the installation and construction of a sidewalk and other public improvements. The specific amount of property being condemned varied with each Condemnee. The written descriptions for the rights-of-way and the easements attached to the declaration of taking referenced the Parx Casino Expansion, and the attached plans included a project entitled "PARX OFFSITE IMPROVEMENTS." (Reproduced Record (R.R.) at 17a-24a.) These plans also declared the Township's intent to deed the permanent rights-of-way along Mechanicsville Road to DOT.

Condemnees filed preliminary objections to the declarations raising eight counts. In Count I, Condemnees alleged that the Township failed to cite a specific statute and section under which the condemnation was authorized. Condemnees acknowledged that second class townships have authority to exercise the power of eminent domain, but argued that such authority is limited. In Count II, Condemnees alleged that the Township failed to adopt an ordinance to layout, open, widen, or vacate a road as required by sections 2304 and 2305 of The Second Class Township Code, 53 P.S. §§67304, 67305. In Count III, Condemnees alleged that the Township failed to adopt an ordinance authorizing the installation and construction of sidewalks as required by section 2401 of The Second Class Township Code, 53 P.S. §67401.

In Count IV, Condemnees alleged that the Township failed to obtain the consent of DOT and adopt an ordinance authorizing the expenditure of Township

3

funds as required by sections 2304(b) and 2401(b) of The Second Class Township Code, 53 P.S. §§67304(b), 67401(b). In Count V, Condemnees alleged that condemnation of land for a sight line easement is not authorized by The Second Class Township Code. In Count VI, Condemnees alleged that the declarations of taking were insufficient as it did not state that the taking was for a public use. In Count VII, Condemnees alleged that the condemnation was not for a public use, but was instead for the private purpose of the expansion of the Parx Casino. Finally, in Count VIII, Condemnees alleged that the taking was excessive. Condemnees note that there are no sidewalks in the area of the land being condemned nor any need for the same.

The Township filed answers to each set of preliminary objections essentially denying the allegations. Pursuant to a stipulation executed by Condemnees and the Township, the trial court issued an order dated November 7, 2013, consolidating the cases. The Township thereafter filed a motion to amend its declarations of taking stating that, due to a clerical error, theses declarations cited an outdated version of The Second Class Township Code. The Township sought leave to amend to recognize the correct version of the statute and to cite Article I, section 10 of the Pennsylvania Constitution and sections 2201, 2312, 2401, and 3401 of The Second Class Township Code, 53 P.S. §§67201, 67312, 67401, and 68401, as authority to condemn private property for public use. By order dated December 4, 2013, the trial court granted the Township's motion and the Township thereafter filed amended declarations of taking.

The trial court conducted a conference call with the parties on December 12, 2013. During this call, the trial court believed that the parties had narrowed the issues raised in Condemnees' preliminary objections by agreeing that Counts I-V were moot and only Counts VI-VIII remained to be decided. The trial court

4

described the remaining issues as: 1) whether the Township was required to obtain approval from DOT prior to condemning the subject properties; 2) whether the taking was for a public purpose; and 3) whether the taking was excessive. Condemnees later disputed the trial court's recollection of this call and its agreement to waive Counts II and III, relating to whether the Township failed to adopt an ordinance to layout, open, widen, or vacate a road or to authorize the installation and construction of sidewalks.

Condemnees submitted the deposition testimony of several Township officials, as well as Condemnees Mooney and Sagot. Harold Gans, the Township's Engineer, testified that he was familiar with the history and development of the Parx Casino and that his office had reviewed the land development plans submitted by the casino. However, Gans stated that his office had not reviewed or approved any plans relating to roadway improvements and/or sidewalks. Gans noted that Langan Engineering & Environmental Services (Langan Engineering), the engineering firm employed by the Parx Casino, had prepared the plans relating to roadway improvements and submitted them directly to DOT for approval without any input from the Township. (R.R. at 358a-62a.)

Matthew Takita, the Township's Director of Building and Planning, testified that land development plans are generally processed through his office and that he was familiar with the intersection at Byberry and Mechanicsville Roads. Takita stated that there were no sidewalks currently at that intersection, nor any sidewalk connecting the intersection to the Parx Casino, which is a long distance back from the intersection. (R.R. at 369a-73a.)

Phillip Wursta, a traffic engineer and vice president of Traffic Planning and Design, testified that he had served as the Township's traffic engineer since 1992. Wursta was familiar with the history of the Parx Casino, including an

5

expansion in the early 2000s that included improvements to the intersection at Byberry and Mechanicsville Roads. Wursta agreed that the expansion would ultimately lead to increased traffic to the Parx Casino. However, Wursta noted that the Township did not review the highway occupancy permits plans, as that was a matter between the Parx Casino and DOT. Wursta acknowledged that the Parx Casino had received a permit from DOT relating to modification of Byberry and Mechanicsville Roads. Wursta further testified that, while the plans labeled "PARX OFFSITE IMPROVEMENTS" indicated that the required rights-of-way would be deeded to the Commonwealth, he was not aware of any agreement between the Township and the Commonwealth as to which would maintain the improvements in these rights-of-way. Wursta also noted that, currently, there were no sidewalks connecting the intersection to the Parx Casino. (R.R. at 380a-405a.)

Paul Mooney, a co-owner of the property along Byberry Road following the passing of his father, Condemnee Francis Mooney, and a transfer from his mother, Condemnee Rita Mooney testified that the condemnation will result in the removal of a significant number of trees on his property. Mooney stated that while the speed limit on Byberry Road is only twenty-five miles per hour, cars speed down the road at approximately fifty to sixty miles per hour in the early morning hours. (R.R. at 429a-31a.) On cross-examination, Mooney testified that people drive fast down Byberry Road "[e]very day, 24 hours a day, 7 days a week," and that most of them are traveling to the casino. (R.R. at 432a.) Mooney agreed that the road was "[v]ery dangerous" for pedestrians. *Id.*

Condemnee Neil Sagot, an attorney whose practice is located on one of the subject properties along Mechanicsville Road, testified that he discussed the upcoming road-widening project with Building and Planning Director Takita in early

2009 and said that Takita never mentioned the installation of sidewalks. Sagot stated that he did not hear anything further about the project or the inclusion of sidewalks until early 2012, when he received information from the Township and Langan Engineering. Sagot said that when he contacted Langan Engineering, a representative advised him that the Township had decided to include the installation of sidewalks in the plans. Sagot thereafter sent letters to various Township officials objecting to the installation of sidewalks and raising issues regarding drainage and flooding on the properties.[1] Sagot testified that, during a later meeting with the Mayor and other Township officials, he was advised that the sidewalks were necessary because the Township was planning on building a home for disabled veterans in wheelchairs nearby. (R.R. at 435a-39a.)

Sagot conceded that he had no problems with the expansion of Mechanicsville Road and the installation of a drainage system and that his sole objection was to the installation of sidewalks. Sagot expressed concern regarding the removal of trees and flooding issues near his building and potential liability issues resulting from a landowner's responsibility for the maintenance of the sidewalks that he/she does not own.[2] Sagot noted that the residents of Regent's Glen, the over-55 community located just east of Condemnee Mooney's property on Byberry Road, did not sign a petition requesting sidewalks until nearly six months after the Township decided to install them. (R.R. at 444a-47a.)

---

[1] These letters were submitted as exhibits, along with several photographs of Sagot's property and the area in general.

[2] Sagot noted that, according to the plans attached to the declarations of taking, DOT will own the sidewalks.

7

On cross-examination, Sagot acknowledged that he was informed by the Township that one of the reasons for installing the sidewalks was pedestrian safety, that there is a sidewalk in front of the Regent's Glen development on Byberry Road, and that the proposed new sidewalks would connect to that sidewalk. Sagot also conceded that during times when water pools at the front of his property on Mechanicsville Road, the only option for a pedestrian is to walk along the street. Sagot testified that he did not know any of the residents of Regent's Glen and did not know why they signed a petition requesting sidewalks. On re-direct examination, Sagot described the road accessing the Parx Casino at the intersection of Byberry and Mechanicsville Roads as a truck/delivery entrance and noted that there were no sidewalks along this access road. (R.R. at 447a-52a.)

**Trial Court Opinion**

Following oral argument and the submission of briefs, the trial court issued a decision and order dated December 19, 2014, overruling Condemnees' preliminary objections with prejudice. The trial court noted that Condemnees had agreed that Counts I–V of their preliminary objections were moot and that the trial court only needed to rule upon counts VI-VIII, relating to whether the Township needed approval from DOT prior to condemning the subject properties, whether the taking was for a public purpose, and whether the taking was excessive. The trial court found that the Township had received a draft highway permit from DOT relating to the subject properties which sufficiently overcame Condemnees' preliminary objection in this regard. The trial court also found that, once completed, the sidewalks will connect from Byberry Road onto Mechanicsville Road and provide an uninterrupted safe path all the way to Street Road where the grocery store is

8

located. Additionally, the trial court found that people drive recklessly along Mechanicsville Road, that pedestrians must currently walk on the road where it is unsafe, and that the Township's rationale for the sidewalks is "expressly for the enhancement of pedestrian safety which is in the interest of the general public." (Trial court op. at 6.)

The trial court noted that private property cannot be condemned for a strictly private use but that a taking by eminent domain does not lose its public character merely because there may exist some feature of private gain. *Reading Area Water Authority v. Schuylkill River Greenway Association*, 100 A.3d 572, 577 (Pa. 2014) (*RAWA)*; *Borough of Big Run v. Shaw*, 330 A.2d 315, 317 (Pa. Cmwlth. 1975). The trial court stated that the absence of the word "public" in the implementing Resolution was not controlling and that it was "satisfied from the record that this taking addresses a fundamental public purpose of protecting the health, safety and welfare of the public." (Trial court op. at 8.) The trial court specifically concluded that sidewalks along "a moderately high speed and heavily travelled thoroughfare where significant pedestrian traffic obtains clearly serves a recognized public need and public purpose." *Id.* In support of that conclusion, the trial court cited the petition signed by approximately 100 residents requesting sidewalks in the area for reasons of safety and convenience.

The trial court described Condemnees' argument that the taking was excessive because there was no need to install sidewalks as "circular and ignores the legislative prerogative and implicit presumptions." *Id.* The trial court stated that the determination of need was within the discretion of the taking authority and that the taking of ten feet each for the installation of the sidewalks was not excessive. Regarding ownership of the sidewalks, the trial court noted that neither the

9

Commonwealth nor the Township intended to take fee ownership of the sidewalks, but rather a permanent easement for the placement of the same. The trial court concluded that there was nothing that prevented the Township from imposing primary responsibility for maintenance on abutting property owners. The trial court cited *Pritchard v. City of Pottsville*, 536 A.2d 844 (Pa. Cmwlth. 1988), for the proposition that, even with sidewalks in which a municipality has a right-of-way, the responsibility for the maintenance of sidewalks may be imposed on the property owner.

Condemnees filed a notice of appeal with the trial court as well as a concise statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(b). In this concise statement, Condemnees raised eight allegations of error/abuse of discretion by the trial court, asserting that: 1) the trial court's findings were not based on substantial evidence; 2) Condemnees never agreed to waive Counts II and III of their preliminary objections; 3) the condemnation failed to meet the requirements of The Second Class Township Code; 4) the sidewalks were for the private benefit of the Parx Casino and invalid under *RAWA*; 5) the taking was excessive; 6) the condemnation of the right-of-way was a fee simple taking, not an easement; 7) the Commonwealth did not approve of the widening of the roads and the installation of sidewalks nor did it accept ownership or maintenance responsibilities thereof; and 8) the trial court's reliance on *Pritchard* was misplaced.

### Trial Court's Pa.R.A.P. 1925(a) Opinion

In its 1925(a) opinion, the trial court rejected Condemnees' arguments. Regarding their substantial evidence challenge, the trial court noted that Condemnees' sole focus was on its "finding" that patrons of the Parx Casino would

10

likely use the sidewalks to access the casino. However, the trial court noted that this "finding" was more of an observation that it made in light of Condemnees' argument. The trial court also noted that Condemnees failed to point to any other findings of fact which were not supported by the evidence of record.

With respect to Condemnees' assertion that they had not waived Counts II and III of their preliminary objections, the trial court stated that the parties had stipulated to narrow the issues and not pursue these counts. The trial court next noted that The Second Class Township Code authorizes a second class township to authorize a declaration of taking by resolution and that the statutory formalities required for the passage of an ordinance are not required. The trial court cited *Appeal of Heim*, 617 A.2d 74, 76 (Pa. Cmwlth. 1992), *appeal denied*, 629 A.2d 1385 (Pa. 1993), wherein we rejected an argument that a second class township's declaration of taking authorized by resolution was invalid because an ordinance was required.

The trial court next noted that section 2401 of The Second Class Township Code specifically authorizes a board of supervisors to enact ordinances regulating the line, grade, and width of sidewalks and to construct sidewalks along any road or highway that is "dangerous to the traveling public and the danger could be materially reduced or lessened by the construction of a sidewalk . . . ." 53 P.S. §67401(c)(4). Additionally, the trial court found that there was a clear public purpose to the installation of the sidewalks, as evidenced by the petition filed by residents of Regent's Glen. The trial court noted that the proposed sidewalks would "abut a very busy public highway in a densely populated area" and allow the public to avoid "walking along a dangerous busy roadway." (Trial court op., February 18, 2015, at 11.)

11

Next, the trial court stated that the distinction of whether the taking was an easement rather than in fee did not "go to the authority of the Township to condemn . . . ." (Trial court op., February 18, 2015, at 12.) The trial court also noted that the Township had received adequate approvals in the form of permits from the Department of Transportation. Finally, the trial court stated that it properly relied on *Pritchard* for the proposition that, even with sidewalks in which a municipality has a right-of-way, the responsibility for the maintenance of sidewalks may be imposed on the property owner.

## Discussion

### The Second Class Township Code/Waiver

On appeal,[3] Condemnees first argue that the trial court erred or abused its discretion in failing to address whether the condemnation meets the requirements of The Second Class Township Code for widening roads and installing sidewalks. Condemnees noted in their brief, as well as during oral argument before this Court, that they have no objection to the widening of the road, only to the installation of sidewalks. More specifically, Condemnees argue that the Township's declarations of taking were invalid without the enactment of an ordinance authorizing them.

In response, the Township contends that these issues were waived as they were encompassed within Counts II and III of Condemnees' preliminary objections, which Condemnees agreed not to pursue during the December 12, 2013

---

[3] In an eminent domain proceeding where the trial court has sustained or overruled preliminary objections to a declaration of taking, our scope of review is limited to determining whether the trial court committed legal error or abused its discretion. *In re Condemnation by County of Berks*, 914 A.2d 962, 965 (Pa. Cmwlth. 2007).

conference call with the trial court. As noted above, Condemnees dispute the trial court's recollection of this call and their purported agreement not to pursue Counts II and III. However, the trial court specifically referenced this agreement in both its December 19, 2014, and February 18, 2015 opinions. In the former, the trial court specifically found that "[b]y agreement, the parties narrowed the issues raised in the preliminary objections with COUNTS I, II, III, IV, V, of the Preliminary Objections now being moot . . . ." (Trial court op., December 19, 2014, at 5.) This finding is supported by the record, namely a February 17, 2014 letter to the trial court from Lauren Gallagher, Esquire, who represented the Township at the time, memorializing the parties' agreement during the conference call to limit the issues. In the latter opinion, the trial court noted that "the parties jointly prepared a stipulation amounting to a withdrawal of claims that the Township failed to comply with [The Second Class Township] Code." (Trial court op., February 18, 2015, at 11.) Gallagher's February 17, 2014, letter also referenced her preparation of a stipulation in this regard following the call, but noted counsel for Condemnees' subsequent refusal to sign the same. Thus, there is sufficient evidence in the record to support a finding of waiver with respect to these issues.

Moreover, even if it was not waived, Condemnees' argument would fail. Condemnees rely on sections 2304(a) and 2401(a) of The Second Class Township Code in support of their argument. Section 2304(a) provides that "[t]he board of supervisors may by ordinance enact, ordain, survey, lay out, open, widen, straighten, vacate and relay all roads and bridges and parts thereof which are located wholly or partially within the township." 53 P.S. §67304(a). Section 2401(a) similarly provides that "[t]he board of supervisors may by ordinance regulate the line, grade and width of curbs, sidewalks or footpaths constructed along the roads or highways in the

township, shall have general supervision over them and may establish a grade or grades for curbs, sidewalks or footpaths . . . ." 53 P.S. §67401(a). However, neither of these provisions support Condemnees' argument that the taking was invalid.

This Court has considered and rejected arguments similar to those raised by Condemnees. *See In re Condemnation of Property Situate in Perry Township*, 938 A.2d 517 (Pa. Cmwlth. 2007); *Appeal of Heim*. In each of those cases, a second class township adopted a resolution that authorized the filing of a declaration of taking. The condemnees filed preliminary objections alleging that the respective townships were required to adopt an ordinance to authorize a condemnation. We rejected the condemnees' arguments, noting that the statutory formalities required for the passage of an ordinance are not required to authorize a condemnation. In other words, we stated that while The Second Class Township Code required an ordinance for the opening of a street, it did not specify what procedure was required for the taking of the land for the street. Ultimately, we held that a resolution adopted by a second class township was sufficient to authorize the filing of a declaration of taking.

We reached a similar conclusion in *Appeal of Jordan*, 459 A.2d 435 (Pa. Cmwlth. 1983). In that case, a borough council had adopted a resolution authorizing the filing of a declaration of taking for the acquisition of land for a public street and utility purposes. The condemnee filed preliminary objections alleging that the borough was required to adopt an ordinance authorizing the taking. We rejected this argument, noting that while the adoption of an ordinance is required to authorize the opening of a street, the adoption of an ordinance was not necessary to authorize the filing of a declaration of taking. Additionally, we noted that section 402(b)(3) of the former Eminent Domain Code, Act of June 22, 1964, P.L. 84, *as amended*, formerly 26 P.S. §1-402(b)(3), implicitly approved of such action by stating that a declaration

14

of taking was required to include a specific reference "to the action, whether by ordinance, <u>resolution</u> or otherwise, by which the declaration of taking was *authorized. . . .*"[4]  *Id.* at 437 (emphasis added).  We further recognized that "the Eminent Domain Code itself provides property owners with remedies."  *Id.* at 438.

In light of the caselaw addressed above, Condemnees' argument that the Township was required to adopt an ordinance, rather than a resolution, authorizing the filing of the declarations of taking would fail.

**Private/Public Purpose**

Next, Condemnees argue that the trial court erred or abused its discretion in concluding that the installation of the sidewalks was not primarily for the private benefit of the Parx Casino and, hence, improper under our Supreme Court's recent decision in *RAWA*.

A municipal authority may only exercise eminent domain power to condemn property for public use.  PA. CONST. Art. I, §10 ("nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured"); Section 204(a) of the Eminent Domain Code, 26 Pa.C.S. §204(a) ("the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited").  Our Supreme Court has explained that a taking will be proper only if the public will be the primary and paramount beneficiary of the taking.  *Middletown Township v. Lands of Stone*, 939 A.2d 331, 337 (Pa. 2007).  In considering whether a primary

---

[4] The former Eminent Domain Code was repealed by the Act of May 4, 2006, P.L. 112, and replaced with the consolidated Eminent Domain Code at 26 Pa.C.S. §§101-1106.  Section 302(b)(3) of the current Code, 26 Pa.C.S. §302(b)(3), contains language identical to that found in former section 402(b)(3).

public purpose was properly invoked, this Court has looked for the "real or fundamental purpose" behind a taking.[5] *Id.* Moreover, a taking "does not lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited." *Washington Park, Inc. Appeal*, 229 A.2d 1, 3 (Pa. 1967).

While our Supreme Court recently addressed the issue of private versus public use in *RAWA*, that case is factually distinguishable and not dispositive here. In *RAWA*, the Reading Area Water Authority (the Authority) adopted a resolution authorizing the use of eminent domain to condemn a utility easement across property owned by the Schuylkill River Greenway Association (Association). The resolution reflected that the easement was to be condemned at the request of a private developer and that it would be used to connect the developer's proposed residential subdivision to water, sewer, and stormwater facilities. Additionally, the resolution stated that the developer would be required to pay all costs associated with the eminent domain proceedings, including just compensation for the Association.

The Authority subsequently filed a complaint in the nature of a declaration of taking with the common pleas court requesting a decree condemning a 50-foot-wide easement across the Association's property. The Association filed preliminary objections asserting that the taking was invalid under the Property Rights Protection Act (PRPA), 26 Pa.C.S. §§201-207. Section 204(a) of the PRPA provides that "the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited." 26 Pa.C.S. §204(a). Citing section 204(a), the trial court sustained the Association's preliminary

---

[5] Pennsylvania courts equate "public use" with "public purpose." *See*, *e.g.*, *Middletown Township*.

16

objections and dismissed the Authority's complaint. On appeal, this Court reversed, concluding that the Authority may exercise eminent domain for the installation of a water main and utility lines. We held that the mere fact that the availability of these utilities would have made the developer's homes more valuable would not negate the project's public purpose of providing water, sewer, and stormwater services to citizens in the Authority's service area.

On further appeal, however, our Supreme Court reversed. The court determined that the Authority sought to exercise its eminent domain power for the specific purpose of providing a utility easement to the developer. Indeed, the court noted that the developer "would not only finance the project, but would acquire exclusive use of the drainage easement to install, operate, and maintain private stormwater and sewer discharge facilities so as to enable it to build a private residential development." *RAWA*, 100 A.3d at 580. The court next discussed the broad prohibition in section 204(a) of the PRPA, which precludes the condemnation of property "to use it for private enterprise." 26 Pa.C.S. §204(a) (emphasis added). The court observed that "[w]hatever public benefit may ensue from the drainage easement, it is being taken to be used for private enterprise and, as such, is prohibited by Section 204(a)." *RAWA*, 100 A.3d at 581 (emphasis added).

Here, unlike *RAWA*, although the Parx Casino was paying for the sidewalks, the sidewalks were not for the exclusive use of the casino. Moreover, section 2401(c)(4) of The Second Class Township Code specifically authorizes a township's board of supervisors to construct sidewalks, stating as follows:

> When the board of supervisors establishes that any part of
> any road or highway is dangerous to the traveling public
> and the danger could be materially reduced or lessened by
> the construction of a sidewalk, curb or footpath, the board
> of supervisors may lay out and construct a sidewalk, curb or

17

> footpath along the dangerous portion of the road or highway at township expense.

53 P.S. §67401(c)(4). Condemnee Mooney acknowledged that people drive fast down Byberry Road "[e]very day, 24 hours a day, 7 days a week," and that the road was "[v]ery dangerous" for pedestrians. (R.R. at 432a.) Condemnee Sagot also acknowledged that pedestrian safety was a concern along Mechanicsville Road, especially when it rains, because the water pools on the edge of his property and pedestrians are forced to walk along the street. (R.R. at 450a.)

The trial court found that there was a clear public purpose for the installation of the sidewalks, i.e., to protect the health and safety of pedestrians who would otherwise have to walk along a very busy and dangerous Mechanicsville Road. Here, the record, including Condemnee Mooney's and Sagot's own testimony discussed above, as well as the petition filed by residents of Regent's Glen, supports the trial court's finding. Additionally, we note that our Supreme Court has held that the fact that a third-party developer is funding the underlying costs of a condemnation, which will ultimately benefit the public in the form of road improvements, casts no "doubt upon the legality of the taking." *Washington Park, Inc. Appeal*, 229 A.2d at 5. This Court has similarly held that such an agreement was "quite logical in that it benefits the taxpayers of the municipality by shifting the costs onto the developer." *Appeal of Heim*, 617 A.2d at 79. Further, this Court has previously held that the predecessor provision to section 2401(c)(4) of The Second Class Township Code "necessarily implied a grant of power to condemn for sidewalks and footpaths because such power often is needed to fulfill [a township's] specifically authorized purpose," namely pedestrian safety. *In re Condemnation by Heidelberg for Footpath, Alleyway & Bridge Purposes*, 428 A.2d 282, 285-86 (Pa. Cmwlth. 1981).

18

In the course of their argument on appeal, Condemnees reiterate several arguments raised and rejected by the trial court, including that the declarations of taking in this case were invalid because neither the Resolution nor the declarations themselves state that the condemnations were for a public use. However, Condemnees cite no authority to support this proposition and we agree with the trial court that the absence of such a statement in the Resolution was not controlling. Further, the declarations of taking in this case sufficiently stated that the purpose of the condemnations was for the installation and construction of sidewalks and other public improvements.

Condemnees also argue that in order for a taking to be valid, the public entity/condemnor must assume ownership and maintenance of the condemned lands. Condemnees rely on *Ormsby Land Co. v. City of Pittsburgh*, 119 A. 730 (Pa. 1923), as support for this argument. However, the court in *Ormsby Land Co.* never referenced a duty of ownership and maintenance. Rather, the court merely held that the city cannot condemn land and then lease that land to a private party, as such an arrangement amounts to a taking of private property for private use. Here, there is clearly no leasing of the sidewalks to the Parx Casino.

Condemnees further dispute the nature of the Township's taking, asserting that the Township right-of-way was not an easement, but a fee simple taking of their property, which precludes Condemnees from obtaining liability insurance on that part of their property. However, as the trial court noted, the distinction of whether the taking was an easement rather than in fee did not "go to the authority of the Township to condemn . . . ." (Trial court op., February 18, 2015, at 12.) Additionally, this Court has previously recognized that "[g]enerally, a 'right-of-way' consists of an easement of use over another's land," but that "[t]he owner of the land

19

over which the right-of-way is granted reserves all incidents of ownership that are not conveyed." *Big Bass Lake Community Association v. Warren*, 950 A.2d 1137, 1148 (Pa. Cmwlth. 2008) (citing *Patricca v. Zoning Board of Adjustment of the City of Pittsburgh*, 590 A.2d 744, 748 (Pa. 1991)). Further, the Resolution and the declarations of taking specifically state that the Township was acquiring a permanent right-of-way for the installation of sidewalks, not fee simple ownership of the property.

## Excessive Taking

Finally, Condemnees argue that the trial court erred or abused its discretion in failing to conclude that the condemnation of ten feet of land for sidewalks was excessive.

This Court has held that "[i]nasmuch as property cannot constitutionally [be] taken by eminent domain except for public use, no more property may be taken than the public use requires - a rule which applies both to the amount of property and the estate or interest to be acquired." *In re Condemnation by Beaver Falls Municipal Authority for Penndale Water Line Extension*, 960 A.2d 933, 937 (Pa. Cmwlth. 2008) (citation omitted). We have also previously noted that "[t]he quantum of land to be acquired is, within reasonable limitations, a matter within the condemnor's discretion." *Appeal of Waite*, 641 A.2d 25, 28 (Pa. Cmwlth.), *appeal denied*, 651 A.2d 543 (Pa. 1994) (citing *Truitt v. Borough of Ambridge Water Authority*, 133 A.2d 797, 799 (Pa. 1957)).

In reviewing the decision of a municipality to condemn property and the extent of the taking, a common pleas court is limited to determining whether the municipality is guilty of fraud, bad faith, or has committed an abuse of discretion.

20

*Appeal of Heim*, 617 A.2d at 76. In this regard, there exists a strong presumption that the condemnor has acted properly, and the burden is heavy upon one attempting to show that a municipality abused its discretion in condemning private property. *Appeal of Waite*, 641 A.2d at 28; *Appeal of Heim*, 617 A.2d at 76.

In their brief, Condemnees do not specify how or why the taking of this additional ten feet of land for sidewalks is excessive. Instead, Condemnees repeat their disagreement with the Township's determination that the sidewalks were necessary for the safety of pedestrians. Indeed, Condemnees begin their argument by stating that "[t]he taking is clearly excessive. The sidewalks are not needed for the road improvements necessitated by improvements to the rear access of the Parx Casino. There are no sidewalks in the area of the land being condemned for the installation of sidewalks. There is no need for sidewalks in the area." (Condemnees' Brief at 40.) Condemnees also question the purported justifications for the sidewalks, including the Mayor's initial stated reason to Condemnee Sagot and the petition filed by the residents of Regent's Glen. However, the fact remains that a petition was filed by the residents of Regent's Glen requesting sidewalks in order to access a grocery store along Mechanicsville Road. The trial court found that this petition evidenced a clear public purpose for the installation of the sidewalks. Additionally, the trial court found that people drive recklessly along Mechanicsville Road, that pedestrians must currently walk on the road where it is unsafe, and that the Township's rationale for the sidewalks is "expressly for the enhancement of pedestrian safety which is in the interest of the general public." (Trial court op. at 6.) Condemnees' contentions simply do not support a finding that the Township decision to condemn was premised on fraud, bad faith, or an abuse of discretion.

21

Because Condemnees waived and/or failed to establish that the condemnation did not meet the requirements of The Second Class Township Code, and, further, failed to establish that the Township's takings were for an exclusive private use or were excessive, we conclude that the trial court did not err or abuse its discretion in overruling Condemnees' preliminary objections.

Accordingly, the order of the trial court is affirmed.

_____

PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation of a Permanent : 
Right-of-Way, Temporary Construction : 
Easement and Sight Line Easement : 
Over Lands Now or Late of Neil B. : 
Sagot and Eric Sagot Tax Map Parcel : 
No. 02-037-066 Consisting of : 
approximately 2,554 square feet of : 
land, more or less : 
                                     : 

In Re: Condemnation of a Permanent :   No.  138 C.D. 2015
Right-of-Way, Temporary Construction : 
Easement Over Lands Now or Late of : 
Andrew R. Krassen Tax Map Parcel : 
No. 02-037-064 Consisting of : 
approximately 3,056 square feet of : 
land, more or less : 
                                     : 

In Re: Condemnation of a Permanent : 
Right-of-Way, Temporary Construction : 
Easement and Sight Line Easement : 
Over Lands Now or Late of Chester : 
Miscerewicz and Lisa Miscerewicz : 
Tax Map Parcel No. 02-037-065 : 
Consisting of approximately 2,034 : 
square feet of land, more or less : 
                                     : 

In Re: Condemnation of a Permanent : 
Right-of-Way Over Lands Now or Late : 
of Francis P. Mooney and Rita Mooney : 
Tax Map Parcel No. 02-037-085-001 : 
Consisting of approximately 3,646 : 
square feet of land, more or less : 
                                     : 

Appeal of: Neil B. Sagot and Eric : 
Sagot, Rita Mooney, Francis P. Mooney : 
having predeceased service of the : 
Declaration of Taking, Chester : 
Miscerewicz and Lisa Miscerewicz : 
and Andrew R. Krassen :

## ORDER

AND NOW, this 18th day of December, 2015, the order of the Court of Common Pleas of Bucks County, dated December 19, 2014, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge